## MARY S. LIEBING v. MUTUAL LIFE INSURANCE COMPANY, Appellant.

### In Banc, December 12, 1918.

1. **CONTRACTS: Governed by Place of Consummation or Performance.** Absent any contrary intention, the validity, obligation and interpretation of a contract relating to personal property are governed by the law of the place where it is made. But no contract is consummated until the final act essential to its obligation is performed; and if that final act is the acceptance of its terms by one of the parties in another state and they are there accepted, it is governed by the laws of that state. And if it appears on the face of the contract that its good-faith performance is to be in some jurisdiction other than that of the *lex loci contractus*, or that it is made with reference to the laws of such other jurisdiction, then the law of the place of performance governs.

2. ———: ———: **Insurance Loan Agreement: Non-forfeiture Statute.** A loan agreement, made by the pledge of an insurance policy, is not subsidiary to the policy in the sense that the restrictions of the non-forfeiture statute (Sec. 6946, R. S. 1909) are as applicable to it as to the policy itself. Though the policy be a Missouri contract and suit is brought on it in this State, the loan agreement is governed by the laws of the state in which the final act essential to its obligation is consummated, or by the laws of the jurisdiction which it states shall govern; and if the loan agreement states that the policy may be cancelled upon failure to pay the loan, the insurance company, when sued on the policy by the beneficiary after the insured's death, should be permitted to show that, upon failure to pay the loan, it cancelled the policy in strict compliance with the terms of the loan agreement and in strict conformity to the laws of the state by which it was governed. [Following N. Y. Life Ins. Co. v. Head, 234 U. S. 148, and N. Y. Life Ins. Co. v. Dodge, 38 Sup. Ct. Rep. 337.]

Appeal from St. Louis City Circuit Court.—*Hon. Charles B. Davis*, Judge.

REVERSED AND REMANDED.

*Fordyce, Holliday & White* for appellant; *Frederick L. Allen* of counsel.

(1) The court erred in overruling the objection to the introduction of any evidence and the demurrers to the evidence offered at the close of plaintiff's case and of the entire case; for this suit was based upon Sec. 7897, R. S. 1899, and said statute, if construed and applied so as to prevent the defendant from deducting the entire indebtedness on the policy from three-fourths of the net reserve, or so as to invalidate the loan agreement and pledge entered into between insured, plaintiff and defendant in this case, is unconstitutional and void in the following respects: (a) Because it denies to the defendant the equal protection of the laws guaranteed to it by the Fourteenth Amendment to the Constitution of the United States; (b) because it deprives the defendant of its liberty without due process of law as guaranteed to it by the Fourteenth Amendment to the Constitution of the United States; and (c) because it deprives the defendant of its property without due process of law as guaranteed to it by the Fourteenth Amendment to the Constitution of the United States. New York Life Ins. Co. v. Head, 234 U .S. 161, 165; New York Life Ins. Co. v. Dodge, 38 Sup. Ct. Rep. 337; Allgeyer v. Louisiana, 165 U. S. 578; Scott v. McNeil, 154 U. S. 34; C., B. & Q. v. Chicago, 166 U. S. 226; Twining v. New Jersey, 211 U. S. 78; Brand v. Union Elev. R. Co., 238 U. S. 586. (2) The court erred in excluding evidence as to the laws of New York. The evidence showed that the loan agreement and pledge were made in New York and that the foreclosure took place there; defendant had pleaded these facts in its answer and had pleaded the laws of New York; therefore, to refuse to permit proof of these laws was to deny full faith and credit to the public acts, records and judicial proceedings of the State of New York, in violation of Section 1 of Article 4 of the Constitution of the United States. New York Life Ins. Co. v. Head, 234 U. S. 149; New York Life Ins. Co. v.

Dodge, 38 Sup. Ct. Rep. 337; Hartford Life Ins. Co. v. Barber, 38 S. C. Rep. 54; Supreme Counsel of Royal Arcanum v. Green, 237 U. S. 531; Tennent v. Union Central Life, 133 Mo. App. 351; Ruane v. Manhattan Life Ins. Co., 194 Mo. App. 222; Chouteau v. Allen, 70 Mo. 329; Bush v. Block, 193 Mo. App. 709; Ins. Co. v. Bank, 160 Ky. 538; Milliken v. Pratt, 125 Mass. 374; Smoot v. Judd, 161 Mo. 673; Lange v. N. Y. Life, 254 Mo. 488; Hauck v. Sharpe, 83 Mo. App. 385; Tremain v. Dyott, 161 Mo. App. 217, 221; Combes v. Knowlson, 193 Mo. App. 554; Machine Co. v. Tomlin, 174 Mo. App. 512; Tennent v. Union Central, 133 Mo. App. 345; Miller v. Tiffany, 1 Wall. 298, 310; Scudder v. Union Bank, 91 U. S. 406; Pritchard v. Norton, 106 U. S. 124, 136; Liverpool Co. v. Phenix, 129 U. S. 397, 447; Coghlan v. Railroad, 142 U. S. 101, 109; London Assur. v. Companhia, 167 U. S. 149, 160; Pinney v. Nelson, 183 U. S. 144; Bedford v. Eastern B. & L., 181 U. S. 227, 242; Int. Harvester v. McAdam, 142 Wis. 114; N. Y. Life v. Scheuer, 73 So. (Ala.) 409; Stone v. Old Colony, 212 Mass. 459; Hibernia Bank v. Lacombe, 84 N. Y. 367; Fidelity v. Harris, 94 Texas, 25; Wheeler v. Business Men's Association, 247 Feb. 677. (3) The court erred in refusing to instruct that the defendant was entitled, under the Amendment of 1903, to deduct the entire indebtedness on this policy from three-fourths of the net reserve, and in so ruling denied to the defendant the equal protection of the laws and deprived defendant of its property without due process of law, in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States. Laws 1903, p. 208; Kaumerick v. Castleman, 21 Mo. App. 487; State v. Scheck, 238 Mo. 429; People v. State Board, 20 Colo. 220; Westerman v. Supreme Lodge, 196 Mo. 670; Rosenplanter v. Provident Sav. Life, 96 Fed. 721; Boswell v. Security Mutual, 119 N. Y. App. Div. 723.

*James J. O'Donohoe* for respondent.

(1) The policy and loan agreement in this case are Missouri contracts, and being Missouri contracts, the

statutes then in force in Missouri entered into and became part thereof, as much so as if copied therein. Liebing v. Ins. Co., 269 Mo. 509; New York Life v. Dodge, 246 U. S. 357; Lukens v. Ins. Co., 269 Mo. 574; McKinney v. Ins. Co., 270 Mo. 305; Cravens v. Ins. Co., 148 Mo. 583; Horton v. Ins. Co., 151 Mo. 604; Whittaker v. Ins. Co., 133 Mo. App. 664; New York Life v. Cravens, 178 U. S. 389; Equitable Life Assur. Soc. v. Clements, 140 U. S. 226; Iowa State Trav. Men's Assn. v. Ruge, 242 Fed. 762; Hicks v. Nat. Life, 60 Fed. 690; Nat. Union v. Marlow, 74 Fed. 775; Equitable Life Assur. Soc. v. Winning, 58 Fed. 541; Fletcher v. New York Life, 13 Fed. 526; Bailey v. Hope Ins. Co., 56 Me. 474; Stevens v. Raisin Fertilizer Co., 87 Md. 679; Expressman's Assn. v. Hurlock, 91 Md. 585. The loan agreement cannot affect the policy, for it is not a contract independent of it. Smith v. Ins. Co., 173 Mo. 329; Burridge v. Ins. Co., 211 Mo. 158; Christensen v. Ins. Co., 152 Mo. App. 551; Paschedag v. Ins. Co., 155 Mo. App. 185; Gillen v. Ins. Co. 178 Mo. App. 89; Mun v. Ins. Co., 181 S. W. (Mo. App.) 606; Crowe v. Ins. Co., 190 S. W. (Mo. App.) 960; McCall v. Ins. Co., 196 Mo. App. 318; McKinney v. Ins. Co., 270 Mo. 305; Dannehauser v. Wallenstein, 169 N. Y. 199; McDonnell v. Ins. Co., 85 Ala. 412; Merritt v. Ins. Co., 55 Ga. 103; Symonds v. Ins. Co., 23 N. H. 27. The loan agreement is a personal obligation of the parties who signed it, namely, the insured and plaintiff. Equitable Life v. De Lisle, 182 S. W. (Mo. App.) 1026; Gillen v. Ins. Co., 178 Mo. App. 89. Besides, the policy stipulates: "That in any settlement of this contract all outstanding indebtedness hereon to the company must be paid." But if the loan agreement is a contract independent of the policy, then the law of Missouri is applicatory, for reasons, among others, that the policy was delivered as a pledge to the defendant in Missouri, and in pledge contracts the law of the place of delivery of the thing pledged or the owner's domicile controls. Hervey v. R. I. Locomotive Works, 93 U. S. 664; Loftus v. F. & M. N. Bank, 133 Pa. St. 97; 1 Wharton, Conf. Laws (3 Ed.), sec. 297, et seq.; Story, Conf. Laws (8 Ed.), sec.

383 et seq. Contracts of insurance or loan agreements made by a New York company in another state are not subject to the New York laws unless the policies or loan agreements so provide; and neither so provided in this case. Mutual Life v. Cohen, 179 U. S. 262; Mutual Life v. Hill, 193 U. S. 551; Metropolitan Life v. Bradley, 98 Tex. 230. The fact that the loan was payable in New York did not make the loan agreement a New York contract. Liverpool & Great Western Steam Company v. Ins. Co., 129 U. S. 397. The law of the place of performance always yields to the *lex fori* and *lex loci contractus.* And even if the loan agreement was accepted in New York, notice of acceptance and payment of part of the proceeds of the loan by the defendant's Missouri agent to the insured were conditions precedent, and, hence, made the loan agreement a Missouri contract. There was part performance in Missouri, namely, the payment of part of the loan to the insured by defendant. Crohn v. U. C. T., 170 Mo. App. 273; Perry v. Ins. Co., 67 N. H. 291; Heiman v. Ins. Co. 17 Minn. 153; Markey v. Ins. Co., 126 Mass. 158; Scudder v. Union Nat. Bank, 91 U. S. 406; Union Bank v. Chapman, 169 N. Y. 543. (2) Even if the New York laws were applicable at the beginning, they cannot now be invoked, for no new issues can be made nor new defenses asserted after the case comes down for retrial. "If a case is to be tried by piecemeal the end of a lawsuit would never be reached. At the trial of the case all issues and defenses should be brought forward." McLure v. Bank, 263 Mo. 128; Lilly v. Menk, 143 Mo. 137; Rasch v. Ins. Co., 201 S. W. (Mo. App.) 919; Shearlock v. Ins. Co., 193 Mo. App. 430; Bange v. Legion of Honor, 153 Mo. App. 154; Carp v. Ins. Co., 116 Mo. App. 528; Livery Co. v. Railroad, 113 Mo. App. 144; Johnson v. Blell, 61 Mo. App. 46; Singer Mfg. Co. v. Givens, 35 Mo. App. 608. The same rule obtains in sister states. In re Estate of Cook, 143 Iowa, 733; Mantle v. Dabney, 47 Wash. 394; Barrett v. McAllister, 35 W. Va. 116, 117; Williams v. Banks, 19 Md. 36; Bassett v. Shepardson, 57 Mich. 428; City of Louisville v. Muldoon, 20 Ky. Law Rep. 1576; Sears' Exr. v.

Marshall, 83 Va. 383; State v. Board of County Commrs., 60 Neb. 570; Murphy v. Plankington Bank, 20 S. D. 178; Gillespie v. Fulton Oil Co., 244 Ill. 14; Ebelhar v. German-American Security Co.'s Assignee, 119 S. W. (Ky. C. of A.) 220; Wood v. Kerkeslager, 227 Pa. 536; Brewster v. Meng, 76 Neb. 560; Hook v. Richeson et al., 115 Ill. 445; Butler v. Thompson, 52 W. Va. 311; McAllister v. Clark, 33 Conn. 252; Continental Casualty Co. v. Semple, 112 S. W. (Ky. C. of A.) 1122; In re Quaker Realty Co., 127 La. 207. The rule is the same in cases of involuntary nonsuit. Bange v. Legion of Honor, 153 Mo. App. 168; Moore v. Nat. Acc. Soc., 49 Wash. 312; Strehlau v. Lumber Co., 152 Wis. 589; Cartin v. Railroad, 43 S. C. 221; Elder v. Railroad, 26 Idaho, 209, cases cited, including Lilly v. Menke, 143 Mo. 137, and Peery v. Railroad, 122 Mo. App. 177. Before this case went to trial the first time, the defense founded on the laws of New York was open to defendant within the legitimate scope of the pleadings. It is now too late to invoke that defense, for all "questions which were raised or could have been raised [on the first trial] are now *res adjudicata.*" Castleman v. Buckner, 202 S. W. (Ky. App.) 681; McKinney v. State, 117 Ind. 26. The defendant in its first and second answers admitted that the non-forfeiture statutes of Missouri were applicable and this court decided that said statutes "disposed of the whole matter," and defendant should not be permitted to amend by denying facts already admitted. Harrison's Admr. v. Hastings, 28 Mo. 346. Invoking the Missouri statutes waives the New York statutes. Michael v. Ins. Co., 10 La. Ann. 737. Neither should an amendment be allowed where the proof required to sustain it would have to be essentially different from the proof required to sustain the original pleading. Scovill v. Glasner, 79 Mo. 449; Maloney v. Real Estate B. & L. Assn., 57 Mo. App. 390. Where a petition is dismissed (except "without prejudice") it will be presumed that the merits were considered and the judgment is final. And in this case the petition was unconditionally dismissed. 1 Black on Judgments, sec. 27;

2 Black on Judgments, sec. 722; Pond v. Huling, 125 Mo. App. 482. And "A final judgment on a demurrer to a petition which goes to the merits makes the whole matter *res adjudicata.*" Ins. Co. v. Smith, 117 Mo. 261; Johnson v. Railroad, 243 Mo. 278. Upon the same principle the doctrine of *res adjudicata* is applied to direct reversals, without remanding where all the facts have been considered and passed upon. Schmelzer v. Furniture Co., 252 Mo. 12; Strottman v. Railroad, 228 Mo. 154. "A determination by the Appellate Court on a former appeal that the evidence was sufficient to take the case to the jury on all the issues raised becomes the law of the case whether right or wrong." White v. Int. Text Book Co., 156 Iowa, 210. Before this action was instituted, the defendant put non-liability on the ground that "there is no decision of the Supreme Court of Missouri conclusively deciding the points arising in the present case," and upon that ground alone. The New York law was not named as a defense. And if there is any proposition more firmly established than any other, it is that "an insurance company, when sued upon a policy, cannot, after the beginning of suit make any objections to paying the loss that are different from or additional to those which it stated before." Shearlock v. Mutual Life, 193 Mo. App. 430; Castner v. Ins. Co., 50 Mich. 273; Wolf v. District Grand Lodge, 102 Mich. 23; Brink v. Ins. Co., 80 N. Y. 108; Smith v. Ins. Co., 107 Mich. 270; Taylor v. Columbia League, 135 Mich. 231; Ins. Co. v. Allen, 128 Ala. 451; Snyder v. Mystic Circle, 122 Tenn. 248; Ins. Co. v. Waugh, 60 Neb. 348; McCormick v. Ins. Co., 163 Pa. 184; Western & A Pipe Lines v. Ins. Co., 145 Pa. 346; Ins. Co. v. Elliott, 60 Ind. App. 112; Ins. Co. v. Ray, 196 Ala. 425; Ward v. Ins. Co., 69 Ore. 347; Milling Co. v. Ins. Co., 127 Iowa, 314; Jacobs v. Mexico Sugar & Refining Co., 115 App. Div. (N. Y.) 499; Railway Co. v. McCarthy, 96 U. S. 258. "He who did not speak, when he should have spoken, shall not be heard now that he should be silent." Quinlan v.

Keiser, 66 Mo. 605; York v. Ins. Office, 113 N. E. (Ind. App.) 1023; Ins. Co. v. Grove, 215 Ill. 299. (3) To require the defendant to pay the policy will violate certain named sections of the state and national constitutions is an entirely insufficient averment to raise a constitutional question, especially to challenge the constitutionality of Sec. 7897, R. S. 1899, for the constitutional inhibition is directed solely against certain legislative acts and not against erroneous judgments. Stegall v. Am. Pigment Chemical Co., 263 Mo. 719; Kemper Mill & Elevator Co. v. Railway, 178 S. W. (Mo.) 502; Powder Mfg. Co. v. Railroad, 196 Mo. 668, 670; Hilgert v. Barber Asphalt Pav. Co., 173 Mo. 319; Woody v. Railway, 173 Mo. 547; Kansas City v. Baird, 163 Mo. 196; Hulett v. Railway, 145 Mo. 36; Mining Co. v. Casualty Co., 161 Mo. App. 194; Paving Co. v. O'Brien, 128 Mo. App. 285; N. O. Waterworks v. La. Sugar Co., 125 U. S. 18; N. O. Waterworks v. La., 185 U. S. 350. A constitutional question is a grave one and hence must be lodged at the first opportunity, or it will be deemed to have been waived. "If it can be appropriately and naturally raised in the pleadings and thereby lodged in the record proper, such is the time and place to raise it." Littlefield v. Littlefield, 227 Mo. 163; Deiner v. Sutermeister, 266 Mo. 514; Speer v. Railroad, 264 Mo. 265; Miller v. Connor, 250 Mo. 677; George v. Railroad, 249 Mo. 199; Milling Co. v. Blake, 242 Mo. 31; Ross v. Grand Pants Co., 241 Mo. 296; Wooley v. Mears, 226 Mo. 41; Hartzler v. Railway, 218 Mo. 562; Lohmeyer v. Cordage Co., 214 Mo. 685. Apart from exceptional cases (in which the instant one is not included) the constitutional question cannot be raised for the first time either in the instructions, in the motion for a new trial or in the motion in arrest. The question must be raised in the pleadings and kept alive in the instructions and motions, otherwise the issue will be considered waived and abandoned. Mercantile Trust Co. v. Lyon, 195 S. W. 1032; State ex rel. v. Railroad, 262 Mo. 735; Dubowsky v. Binggeli,

258 Mo. 201; Pickel v. Pickel, 243 Mo. 666; Howell v. Sherwood, 242 Mo. 540; State v. Gamma, 215 Mo. 103; Shell v. Railway, 202 Mo. 339; Railroad v. Adams, 180 U. S. 38. The time for raising a constitutional question is determined by the state practice and a decision of the state court thereon is binding on the Supreme Court of the United States. Railway v. Burrus, 244 U. S. 103; Railway v. Mims, 242 U. S. 535; Ins. Co. v. McGrew, 188 U. S. 291; Eastern Bldg. & Loan Assn. v. Welding, 181 U. S. 49. And when the decision of the State Court is placed upon a non-federal ground such as state practice or estoppel, the decision is binding on the Federal Supreme Court. Enterprise Irrig. Dist. v. Canal Co., 243 U. S. 164; Railway Co. v. Purdy, 185 U. S. 148; Layton v. Missouri, 187 U. S. 356; Jacobi v. Alabama, 187 U. S. 133; Brooks v. Missouri, 124 U. S. 394. Sec. 7897, R. S. 1899, has been held constitutional in the following cases: Cravens v. Ins. Co., 148 Mo. 583; Ins. Co. v. Cravens, 178 U. S. 389; Horton v. Ins. Co., 151 Mo. 604; Burridge v. Ins. Co., 211 Mo. 403; New York Life v. Dodge, 246 U. S. 357. The constitutionality of said statute has been pronounced "a dead question." Turner v. Land & Timber Co., 259 Mo. 15; Schmidt v. United Order of Foresters, 259 Mo. 491; Dennis v. Modern Brotherhood of America, 231 Mo. 211. The judicial construction of a statute in prior cases enters into and becomes a part of the contract. Hence the cases of Cravens v. New York Life, 148 Mo. 583, s. c. 178 U. S. 389, and Horton v. New York Life, 151 Mo. 604, became constituent elements of the policy in suit and constituted a part of the consideration for entering into the contract; and a decision now holding the non-forfeiture statute unconstitutional to affect the policy in question would be an impairment of contract within the meaning of the State and National Constitutions. State ex inf. v. Missouri Athletic and St. Louis Clubs, 216 Mo. 604; Wall v. Travis Co., 174 U. S. 499; Douglas v. County of Pike, 101 U. S. 677; Louisiana v. Pilsbury, 105 U. S. 278; Lowenstein v. Casualty Co., 88 Fed. 478; Casualty

Co. v. Waterman, 161 Ill. 636; Collier v. Life Assn., 119 Fed. 617; Burgess v. Seligman, 107 U. S. 20; Gelpicke et al. v. The City of Dubuque, 1 Wall. 175; Havemeyer v. Iowa Co., 3 Wall. 294; Mitchell v. Burlington, 4 Wall, 270; Schmidt v. Foresters, 228 Mo. 698; Wilkes Co. v. Coler, 180 U. S. 506; Loeb v. Columbia Twp., 179 U. S. 472; Stanley Co. v. Coler, 190 U. S. 437. In the absence of the Missouri non-forfeiture statutes the plaintiff is entitled to recover for the following reasons, namely: The policy contains no forfeiting stipulation for failure to pay a loan and the Court will not supply one. Tetley v. McElmurry, 201 Mo. 394; Haas v. Ins. Co., 84 Neb. 682; Dezell v. Casualty Co., 173 Mo. 253; Gruwell v. K. & L. of S., 126 Mo. App. 496. Neither the loan agreement nor the rules of the defendant form a part of the policy because not indorsed on the policy, set forth therein, nor attached thereto. There is no reference whatever to the loan agreement in the policy. Miller v. Ins. Co., 168 Mo. App. 330; McCarthy v. Ins. Co., 46 Nat. Corp. Rep. 287; Snyder v. Ins. Co., 13 Wend. (N. Y.) 92; McCullom v. Ins. Co., 61 Mo. App. 352; Cole, Agt., v. Ins. Co., 63 How. Pr. (N. Y.) 442; Mutual Life v. Allen, 212 Ill. 134; Equitable Life Assur. Soc. v. Golson, 159 Ala. 508. The incontestability stipulation eliminates all defenses not accepted in that provision and non-payment of loans is not excepted. Harris v. Ins. Co., 248 Mo. 304; 2 Bacon (4 Ed.) secs. 447, 448; Arold v. Equitable Assur. Soc., 228 Fed. 157; Ins. Co. v. McGinnis, 180 Ind. 16; Williams v. Ins. Co., 189 Mo. 70; Mitchell v. Supreme Lodge, 155 Ill. App. 183; Kelly v. North American Union, 146 Ill. App. 611; Loyal Americans of the Republic v. Mayer, 137 Ill. App. 574; Ins Co. v. Robinson, 104 Ga. 256; Ins. Co. v. Fitzgerald, 143 Ga. 725; Mutual Reserve v. Austin, 142 Fed. 398. (4) With respects to loans the agreement was that they should be made in conformity with the defendant's rules in force when the policy was issued. Therefore, it is upon these rules—and these rules alone—that the right of forfeiture for non-payment of a

loan can be predicated. The defendant failed to plead or prove said rules, although where a forfeiture is relied on its conditions must be pleaded and proven with technical accuracy and completeness. The loan agreement cannot enlarge on the policy. Burchard v. W. C. T. A., 139 Mo. App. 606; Chadwicks v. Triple Alliance, 56 Mo. App. 463; Bozeman's Admr. v. Ins. Co., 130 Ky. 584; Francis v. Ins. Co., 243 Pa. 380. (5) The stipulation in the loan agreement for forfeiture and confiscation of the policy for non-payment of the loan is void under Missouri common law. Parties cannot, under that law, make a valid agreement that there shall be no redemption after default. And by force of Sec. 7184, R. S. 1909, the stipulation is void because usurious extortion. Sheppard v. Wagner, 240 Mo. 409; Smith v. Becker, 192 Mo. App. 597. Such stipulations have been denounced as void under the common law by the courts of the sister states; and they are null, too, under the civil and Roman laws. Luckett v. Townsend, 3 Tex. 119, 49 Am. Dec. 723 (and note); Stephens v. Sherrod, 6 Tex. 301; Smith v. Omartz Mining Co., 14 Cal. 242; Brother v. Saul, 11 La. Ann. 222; 4 Kent's Comm., pp. 139-140; Story's Comm. Bailments (9 Ed.), secs. 345, 346; Hughes v. Johnson, 38 Ark. 285; Vickers v. Battershall, 32 N. Y. Supp. 314; Palmer v. Mutual Life, 121 Minn. 395; Mutual Life, v. Twyman, 122 Ky. 513; Milliken-Helm Com. Co. v. Albers Com. Co., 244 Mo. 38; Greer v. Lafayette County Bank, 128 Mo. 559; Wood v. Matthews, 73 Mo. 477; Wilson v. Drumrite, 21 Mo. 325; Smith v. Ins. Co., 173 Mo. 340; Ins. Co. v. Evans, 136 Ky. 391; Ins. Co. v. Grigsby, 10 Bush. 310; Montgomery v. Ins. Co., 14 Bush. 51; Ins. Co. v. Van Meters, Admr., 137 Ky. 4; Drury's Admx. v. Ins. Co., 115 Ky. 681; Toplitz v. Bauer, 161 N. Y. 325; Bailey v. Am. Deposit Co., 52 App. Div. (N. Y.) 406; Ins. Co. v. Baker, 85 Ill. 410; Nashville Trust Co. v. First Nat. Bank, 123 Tenn. 617; Livingston v. Story, 11 Pet. (U. S.) 351; Groeltz v. Cole, 128 Iowa, 340; Seymour v. Ives, 46 Conn. 109; Ins. Co. v. Curry, 115 Ky. 100;

McEachern v. Ins. Co., 15 Ga. App. 222. In the absence of statute, the pledgee cannot confiscate the pledged property. Indeed, he is bound to sell it, and he cannot even become a purchaser at the sale. Easton v. German-American Bank, 127 U. S. 532; Pauley v. State Loan, Etc., Co., 165 U. S. 606; Harmon v. Nat. Bank, 172 U. S. 644.

BOND J.—This is the second appeal in this case. On the former appeal the question presented was the propriety of an adverse instruction, under the constraint of which plaintiff took a nonsuit with leave to move to set it aside. The evidence in the case and the points then in judgment are set out in 269 Mo. 509.

Upon the remand of the former appeal the pleadings were reformed, and submitted, among other issues, the applicability of the statutes of Missouri to a loan agreement made by the assured with defendant, secured by a pledge of the policy in suit.

The loan agreement, of date October 12, 1904, was to the effect that the Mutual Life Insurance Company of New York lent to Frederick W. V. and Mary S. Blees, the sum of $9550. From this amount the company deducted the sum of $4291.50 as premium to September 29, 1905, and $468 as interest thereon. This agreement also contained the following:

"The receipt of the foregoing amount as a loan is hereby acknowledged upon the pledge as hereinafter set forth in Policy No. 1207072 in said company. And the said parties of the second part agree to repay the said sum of $9550 to the company at its head office, Nassau, Cedar and Liberty Streets, in the City of New York, on the 29th day of September, 1905.

"In consideration of the amount of said loan the parties of the second part hereby assign, transfer and set over all of their right, title and interest in and to said Policy No. 1207072 issued by said company on the life of Frederick W. V. Blees, together with any and all moneys which may be or become payable under the

same, to the company as collateral security for the payment of said loan with interest; the said parties of the second part will forever warrant and defend the title of the said company to the said policy.

"In the event of default in the payment of said loan on the date hereinabove mentioned, the company is hereby authorized at its option, without notice and without demand for payment, to cancel said policy, and apply the customary cash surrender consideration then allowed by the company for the surrender for cancellation of similar policies, namely, $9550 to the payment of said loan with interest, the balance, if any, to be payable to the parties entitled thereto on demand, or the company may at its own option renew said loan for one year or less period on the written request of any one of the parties of the second part hereto and without any further notice to any one of the parties of the second part."

The policy pledged for this loan agreement was issued on September 29, 1901. When the above loan agreement was sent to the home office of the defendant in New York and accepted, and after the deductions as therein provided for, a check for the remainder, drawn upon the American Exchange Bank of New York, was forwarded to the assured and subsequently paid. No further premiums were ever paid on the policy nor was the loan paid at its maturity, to-wit, September 29, 1905.

Thereafter, on November 15, 1905, the defendant exercised the right under the loan contract to foreclose the pledge of the policy and applied the full cash surrender value to the extinguishment of the loan and cancellation of the indebtedness and the policy.

Frederick W. V. Blees, the assured, before his death on September 8, 1906, and before making the loan, assigned the policy in question to his wife, who jointly with him executed the loan agreement. About six years after the death of her husband, the wife, who had remarried, brought the present action. On the trial the court gave a peremptory instruction to find for plaintiff, re-

sulting in a judgment for $92,069.28. Defendant duly appealed.

II. The decisive question now presented relates to the action of the trial court in excluding all evidence as to the laws of New York.

Defendant pleaded that the loan agreement and pledge of the policy was a contract made in New York and governed by its laws, which were also pleaded in defendant's answer on the last trial. The trial judge took the view that this contract and pledge were covenants subsidiary to the policy and not independent and, therefore, as much under the restrictions of the applicatory statutes of this State (R. S. 1909, sec. 6946) as the policy itself. That view was in accord with the former decisions of this State. [Head v. Ins. Co., 241 Mo. 403, and cases cited.]

This case has been reviewed by the Supreme Court of the United States (N. Y. Life Ins. Co. v. Head, 234 U. S. 148), but that court did not deem it necessary to the conclusion there expressed, to rule upon the relation of a loan agreement to the contract contained in the policy—i. e. whether subsidiary or independent—since its view, that the loan agreement before it was not subject to the terms of the forfeiting statute of Missouri (R. S. 1909, sec. 6946), was based upon the postulate that the State of Missouri could not control "all subsequent agreements" by the parties to a policy of insurance taken out in that State, if entered into "in other jurisdictions by persons not citizens of Missouri and lawful when made." [N. Y. Life Ins. Co. v. Head, supra, l. c. 165.] To the extent that the loan contract (whether subsidiary or independent as to a policy) in the Head case was not subjected to the non-forfeiting statute (R. S. 1909, sec. 6946) governing the policy, the previous rulings of this court were disapproved.

While the parties to the loan agreement in the Head case were non-residents of Missouri, that fact was not a determining one in the decision of the Su-

preme Court of the United States; for in the subsequent decision of N. Y. Life Ins. Co. v. Dodge (38 U. S. Sup. Ct. Rep. 337) it distinctly appeared that the assured Dodge and his wife, the beneficiary, were at all times citizens and residents of Missouri, and that they borrowed money on a pledge of the policy, sending it and the loan contract to New York for acceptance according to the agreement signed by them in Missouri. In disposing of the issue arising on that state of facts, it was said, page 339:

"That the policy when issued to Dodge became a Missouri contract, subject to its statutes, so far as valid and applicable, is undisputed and clear. The controlling doctrine in that regard was announced and applied in Equitable Life Ins. Co. v. Clements, 140 U. S. 226; N. Y. Life Ins. Co. v. Cravens, 178 U. S. 389, and Northwestern Life Ins. Co. v. Riggs, 203 U. S. 243. In each of those cases the controversy related to the interpretation and effect of an original policy—not a later good-faith agreement between the parties. We held that to the extent there stated the State had power to control insurance contracts made within its borders. With those conclusions we are now entirely content; but they do not rule the question presently presented. Here the controversy concerns the effect of the state statute upon agreements between the parties made long after date of the policy and action taken thereunder; their essential fairness and accordance wit'. New York laws are not challenged.

"Considering the circumstances recited above, we think competent parties consummated the loan contract now relied upon in New York where it was to be performed. And, moreover, that it is one of a kind which ordinarily no state by direct action may prohibit a citizen within her borders from making outside of them. It should be noted that the clause in the policy providing 'cash loans can be obtained by the insured on the sole security of this policy on demand,' etc., cer-

tainly imposed no obligation upon the company to make such a loan if the Missouri statute applied and inhibited valid hypothecation of the reserve as security therefor as defendant in error maintains. She cannot, therefore, claim anything upon the theory that the loan contract actually consummated was one which the company had legally obligated itself to make upon demand."

The court then referred to its previous ruling in the Head case (234 U. S. 149) reciting the fact under which is held the loan contract in that case to be free from the control of the non-forfeiting statute of this State (R. S. 1899, sec. 7897; R. S. 1909, sec. 6946) although the policy itself was a Missouri contract, and concluded the discussion, viz:

"Under the laws of New York where the parties made the loan agreement now before us, it was valid; also it was one which the Missouri Legislature could not destroy or prevent a citizen within its borders from making beyond them by direct inhibition; and, applying the principles accepted and enforced in Insurance Company v. Head, we think the necessary conclusion is that such a contract could not be indirectly brought into subjection to statutes of the State and rendered ineffective through a license authorizing the insurance company there to do business. As construed and applied by the Springfield Court of Appeals, Section 7897 (R. S. Mo. 1899) transcends the power of the State. To hold otherwise would permit destruction of the right—often of great value—freely to borrow money upon a policy from the issuing company at its home office and would, moreover, sanction the impairment of that liberty of contract guaranteed to all by the Fourteenth Amendment."

Although meeting with a sharp dissent, the foregoing ruling is paramount and imperative on this court in all cases like the present, subject to review by the Supreme Court of the United States.

III.   The question, therefore, to be ruled is whether the loan agreement and pledge of the policy in the instant case are governed by the laws of New York. This is determinable by the principles of law governing the making, the validity, the interpretation and the enforceability of contracts made under circumstances such as are shown in the record.

Absent any contrary intention, the validity, obligation and interpretation of a contract relating to personal property, are governed by the law of the place where it is made.  It is generally true that the place of performance governs matters connected therewith and that the remedy depends upon the law of the place where suit is brought. [2 Elliott, Contracts, sec. 1110 et seq; Scudder v. Union Nat. Bank, 91 U. S. 406; Ruhe v. Buck, 124 Mo. l. c. 183 et seq; Tremaine v. Dyott, 161 Mo. App. l. c. 221.]   No contract can be consummated until the final act essential to its obligation is performed.   [2 Elliott, Contracts, sec. 1115; 5 R. C. L., p. 935, sec. 26, and cases cited under note 8.]  If, therefore, the act creating the obligation of a contract is performed at a particular place, the contract must be said to have been made at that place; for until the act done there the parties are not bound.  [1 Elliott, sec. 62.]  It is also true that ''when it appears upon the face of the contract that there is to be a good-faith performance thereof in some jurisdiction other than that of the *lex loci contractus,* or that it is made with reference to the laws of some other place, then it is to be construed according to the law of the place with reference to which it is made.  When the terms or nature of the contract show that it was to be executed in another country or state, then the place of making the contract becomes so far immaterial, and the law of the place where the contract is to be performed governs in determining the rights of the parties.'' [2 Elliott, Contracts, sec. 1119.]

It is clear that ''if the place where the contract is made is also the place where it is to be performed, there is, ordinarily, no doubt as to the application of the

rule, for then the *lex loci contractus* and the *lex solutionis* are the same." [5 R. C. L., p. 934, sec. 25, and cases cited under note 6.] Applying the foregoing principles of law, as far as invoked by the facts in the present case, there can be no escape from the conclusion that the loan contract and pledge of the policy were both consummated and to be performed in the State of New York. It is evident that the loan contract did not become a binding obligation until it was delivered to the defendant (appellant) in the State of New York and *assented to and accepted by it there.* It is also apparent from the portion of the loan contract quoted above that the promissors therein (plaintiff and her husband) agreed "to repay the said sum of $9550 to the company at its head office, Nassau, Cedar and Liberty Streets, in the City of New York on September 29, 1905." Necessarily, therefore, the place of performance of the loan contract and the accompanying pledge of the property, were fixed by the agreement itself in the State of New York. These facts made it a New York contract and performable in that State, just as fully as if the parties had recited *in haec verba* that the laws of New York should govern an agreement entered into in that State and contracted to be performed in that State. The recital of such an agreement is the only difference as to the loan agreements between the case at bar and the recent decision of the Supreme Court of the United States in N. Y. Life Ins. Co. v. Dodge, supra. But inasmuch as such a recital was not necessary in the present case, in view of the fact that the contract itself was not *made* until the defendant became a party to it in New York, where it was also specifically agreed it should be performed, there is no point of essential distinction between the facts in judgment in this case and those presented in N. Y. Life Ins. Co. v. Dodge, supra.

It necessarily follows that conformity to the ruling in that case requires the judgment in the instant case to be reversed and the cause remanded for the error of

the trial court in excluding the proof of the New York laws.

On a new trial an opportunity will be afforded to determine the issue as to whether or not the defendant complied strictly with the terms of the loan agreement and conformed strictly to the laws of New York in the cancellation of the policy and the extinguishment of the loan indebtedness.

The judgment is reversed and the cause remanded. It is so ordered.

The foregoing opinion of *Bond, C. J.*, in Division One is adopted as the opinion of Court in Banc; *Walker, Faris* and *Williams, JJ.*, concur; *Woodson, J.*, dissents.