Alvin J. ROSENFELD, Plaintiff,

v.

CONTINENTAL BUILDING OPERAT-
ING COMPANY, Defendant.

No. 9351.

United States District Court
W. D. Missouri, W. D.

Nov. 9, 1955.

**466**

Davis, Thomson, Van Dyke & Fairchild, Kansas City, Mo., for plaintiff.

A. L. Cooper and Paul Barnett, Kansas City, Mo., for defendant.

WHITTAKER, District Judge.

This is an action brought in the name of Alvin J. Rosenfeld (who, at the time in question, was an employee of, and a bailee of diamonds belonging to, H. Witsenhuysen & Sons, Inc. and Ever-Love Diamonds, Inc.—New York corporations) against Continental Building Operating Company for $31,198.80, the value of certain diamonds belonging to H. Witsenhuysen & Sons and Ever-Love Diamonds, Inc., but in the possession of their employee, Alvin J. Rosenfeld, that were stolen from Rosenfeld's room in defendant's hotel in Kansas City on September 22, 1949, because of the claimed failure of defendant to maintain an iron safe in its hotel for the receipt and safekeeping of such diamonds, as contemplated by Sections 419.010, 419.020, and 419.030, V.A.M.S.

The matter is now before me upon defendant's motion for a summary judgment, raising the legal question of whether this action is being "prosecuted in the name of the real party in interest", as required by Rule 17(a) of Federal Rules of Civil Procedure, 28 U.S. C.A.

Defendant, in support of its motion, has submitted certain exhibits (a photostatic copy of an insurance policy, of a proof of loss, of a "loan receipt", and of a check), the deposition of Alvin J. Rosenfeld, and an affidavit of Paul Barnett, from all of which it appears, without dispute, (a) that, at the time in question,

H. Witsenhuysen & Sons, Inc. and Ever-Love Diamonds, Inc. (hereinafter called either "insureds" or "bailors") held a "jeweler's block policy", issued by St. Paul Fire and Marine Insurance Company (hereinafter called "insurer"), countersigned and delivered in New York, under which the insurer insured the insureds "against loss of, or damage to, the property therein specified" (which included the diamonds involved) in limits far exceeding the value of these diamonds, (b) that the policy contained no provision authorizing the insurer to discharge its liabilities thereunder, in the event of loss, by a "loan" to the insureds, but it did contain a provision subrogating the insurer to all rights of the insureds against third persons upon payment to the insureds of a loss under the policy, (c) that on the 14th day of October, 1949, the insureds prepared and submitted to the insurer a proof of loss, reciting that certain of its diamonds, then in the possession of its salesman, Rosenfeld, were stolen from his room in defendant's hotel in Kansas City, on the 22nd day of September, 1949, and that they were of the value of $31,198.80, and making claim for that sum under the policy, (d) that on October 26, 1949, the insurer delivered to the insureds by check, made, delivered and payable in New York, the sum of $31,198.80, and took from insureds a "loan receipt" executed and delivered in New York on that date, reading as follows:

"Borrowed and Received from St. Paul Fire & Marine Insurance Company, St. Paul, Minn.

The Sum of Thirty-One Thousand One Hundred Ninety-Eight and 80/100 Dollars, $31,198.80, as a loan, without interest, repayable out of any net recovery the undersigned may make from any vessel, carrier, bailee, or others, upon or by reason of any claim for loss of or damage to the property described below, or from any insurance effected by any carrier, bailee or others on said property, and as security for such repayment, we hereby pledge to the

said Insurance Company all such claims and any recovery thereon.

"In further consideration of the said loan, we hereby guarantee that we are the persons entitled to enforce the terms of the contract of bailment, or of transportation set forth in any bills of lading covering the said property; and we hereby appoint the officers of the said Insurance Company and their successors, severally, our agents and attorneys in fact, with irrevocable power to collect any such claim and to begin, prosecute, compromise or withdraw, in our name, but at the expense of the said Insurance Company, any and all legal proceedings which they may deem necessary to enforce such claim or claims and to execute in our name any documents which may be necessary to carry into effect the purposes of this agreement.

"We also agree to refund the above sum should the merchandise mentioned below be finally tendered or delivered to the consignee or person entitled to receive the same.
"Description of
    Property                    Merchandise

"On or
About 9–22–49

"Date and Details of Loss Merchandise on memorandum to Al Rosenfeld stolen from him in Continental Hotel, Kansas City, Missouri.

"H. Witsenhuysen & Sons, Inc. &
Ever-Love Diamonds Inc.
Signature Abraham Polak,
"Date
"October 26, 1949"

(e) that on October 16, 1954, the insurer caused this suit to be instituted in the name of plaintiff, Rosenfeld, seeking a judgment against defendant, hotel operator, in the sum of $31,198.80, as the value of the stolen diamonds, and (f) that Rosenfeld did not have, at the time of the institution of this suit, and had never had, any personal or beneficial interest in these diamonds, and that recovery of their value is sought in this suit for the benefit of the insurer.

Rule 17(a) requires simply that "Every action shall be prosecuted in the name of the real party in interest". That means that the one who seeks relief upon a claim must, legally, or equitably, own the claim under the substantive law of the state, United States v. Allbaugh, D.C.Neb., 83 F.Supp. 109; Carlson v. Glenn L. Martin Co., D.C.Ohio, 103 F. Supp. 153; Capo v. C–O Two Fire Equipment Co., D.C.N.J., 93 F.Supp. 4; Du Roure v. Alvord, D.C.N.Y., 120 F.Supp. 166, and Koepp v. Northwest Freight Lines, D.C.Minn., 10 F.R.D. 524, and, therefore, in determining who is the real party in interest under Rule 17(a) the Court must first ascertain who has the substantive right of action under the controlling substantive state law, American Fidelity & Casualty Co. v. All-American Bus Lines, 10 Cir., 179 F.2d 7, 10; McWhirter v. Otis Elevator Co., D.C.S.C., 40 F.Supp. 11, and Montgomery Ward & Co. v. Callahan, 10 Cir., 127 F.2d 32, 36.

Doubtless plaintiff, Rosenfeld, was a bailee of these diamonds, and, as such, *originally* had a right to sue defendant for their value under the substantive law of Missouri, where the loss occurred, Parker-Washington Co. v. St. Louis Transit Co., 165 Mo.App. 302, 147 S.W. 189, 191; State ex rel. and to Use of Kibble v. First National Bank, Mo. App., 22 S.W.2d 185, 194, and Bradley v. St. Louis Terminal Warehouse Co., 8 Cir., 189 F.2d 818, but when a bailee sues as a bailee—*absent, as here, any special or personal interest in the subject of the bailment*—he proceeds as a quasi-trustee for, and for the benefit of, and is bound to give over the avails of the suit to, the bailors. Ibid., and United States v. One 1946 Mercury Sedan Auto, D.C. N.D.Ga., 100 F.Supp. 957, 961; Industrial Inv. Co. v. King, 159 Miss. 491, 132 So. 333; Marietta Ice & Coal Co. v. Western & A. R. Co., 24 Ga.App. 725, 102 S.E. 182; Walsh v. United States Tent & Awning Co., 153 Ill.App. 229, and United States v. Atlantic Coastline R. Co., D.C.N.C., 206 F. 190, and the bailee's

action is open to any defense which might be made against the bailors, United States v. Atlantic Coastline R. Co., supra, and Missouri K. & T. R. Co. v. Hunter, Tex.Civ.App., 216 S.W. 1107, and we, therefore, have the question of whether the events subsequently transspiring in New York have destroyed the original right of the bailee to prosecute this action for the benefit of the bailors (when they no longer have any beneficial interest in the subject of the suit), or for the insurers to prosecute it in his name for their benefit.

■ Defendant says that, under the substantive state law of New York, where the payment and the "loan receipt" were made—which law controls the effect of those contracts, not only in New York, but also in Missouri, because it is the law of conflicts of Missouri that the law controlling the contract is a part of the contract, Liebing v. Mutual Life Insurance Co., 276 Mo. 118, 207 S.W. 230; Illinois Fuel Co. v. Mobile, etc., R. Co., 319 Mo. 899, 8 S.W.2d 834, and Order of United Commercial Travelers v. Meinsen, 8 Cir., 131 F.2d 176, 179, the legal effect of the insurer's payment to the insureds, and of the "loan receipt" given by the insureds to the insurer in New York on October 26, 1949, was "payment" of the bailors-insureds claim, and subrogated the insurer to all of their claims against defendant, and that the insurer thus became the real party in interest, and that any suit thereafter commenced would have to be prosecuted in its own name under Rule 17(a), United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171.

I find the substantive law of New York upon the question of the effect of a "loan receipt" made there, to be very much confused in the opinions of the intermediate courts of appeal of that state. About half of them hold it constitutes "payment" and the other half hold it does not. Fairly typical of those holding that it does constitute payment is Scarborough v. Bartholomew, City Ct.,

22 N.Y.S.2d 635, 638, where the Court said:

"The view adopted by this Court is that to give effect to the literal words of such arrangements would amount to a distortion of the true intentions of the parties concerned. Viewed realistically and practically, there is no question but that the insured does not regard himself as a debtor in any sense of the word. Actually, he receives the money as compensation for the loss suffered by him in the collision. He certainly regards the payment as a payment of the loss under the terms of the policy. That the insurance company does not regard the arrangement as a loan is evidenced by the inclusion of a provision in the loan receipt that the sum is a 'loan without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person * * * liable for the loss'. *. * * 'The advance of money to the defendants by the Home Insurance Company constituted a payment under the terms of the policy and to that extent the insurance company became subrogated to the rights of the defendants and is a necessary party in order to prevent a multiplicity of actions.' "

■ But I find that the opinions of the Court of Appeals of New York, its highest court, have been consistent, at least in later years, upon this question, and they hold that where the insurance policy provided that the insurer might discharge its liabilities to the insured either by payment or by a loan, the "loan receipt" does not constitute payment, but where the policy does not authorize the insurer to discharge its liabilities to the insured by a loan, but only by payment, the loan has the legal effect of payment. Thus, in Sosnow, Kranz & Simcoe v. Storatti Corp., the intermediate appellate court pointed out that "Each policy contained provisions authorizing the insurer

upon the occurrence of a loss either to pay the loss or to make a loan for the amount of the loss and maintain an action in the name of the insured against other parties believed to be liable", 269 App.Div. 122, 54 N.Y.S.2d 780, 781, and held that in those circumstances and because of that provision the loan, which was contemplated and authorized by the policy provisions, did not constitute payment. The New York Court of Appeals affirmed that decision, without opinion, at 295 N.Y. 675, 65 N.E.2d 326. On the other hand, in Charles Miller Coat Co. v. Myron Herbert, Inc.—an action against a landlord, for water damage, by a tenant who had received a loan from his insurer equal to his loss—the defendant landlord asserted, as a defense, "that plaintiff's insurer, and not plaintiff, is the real party in interest." The plaintiff moved to strike out that answer. The motion being overruled by the city court, plaintiff appealed. The appellate term affirmed, Sup., 86 N.Y.S.2d 736, 737, saying "Affirmance is required under authority of Cocoa Trading Corp. v. Bayway Term. Corp., 290 N.Y. 697, 49 N.E.2d 632." On further appeal, in the same case, the Supreme Court, appellate division, said, 275 App.Div. 821, 89 N.Y.S.2d 703:

> "Determination of the Appellate Term, affirming the order of the City Court, affirmed with costs to the defendant-respondent. *No clause authorizing the giving of a loan receipt is contained in the insurance policy.*"

That decision was affirmed by the Court of Appeals of New York at 300 N.Y. 477, 88 N.E.2d 659. It thus seems clear that the Court of Appeals of New York has held that where the policy contains a provision authorizing the insurer to discharge its liabilities to the insurer by a loan, the loan does not constitute payment, but where the policy contains no provision for a loan, but provides only for payment, a loan constitutes payment.

■ Further development of the law of New York upon the point was arrested when its Legislature amended, effective September 1, 1950, Section 210 of the New York Civil Practice Act to say (after the requirement that "Every action must be prosecuted in the name of the real party in interest") that "an insured person * * * which has executed to his insurer either a loan or subrogation receipt, trust agreement, or other similar instrument, * * * may sue without joining with him the person for whose benefit the action is prosecuted." This, however, is purely adjective and procedural and did not change the substantive law of New York. It affected only the matter of who might sue in the courts in New York state, and permits one who has given a "loan receipt" to sue there, in his own name, even though he is not the real party in interest. That procedural statute cannot affect the matter of who owns the cause of action or can assert it in a Federal court in Missouri, as the real party in interest under Rule 17(a).

Plaintiff does not attempt to deal with the New York decisions, but says only that they are in confusion. Rather, he cites and relies upon the case of Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, decided in 1918, as controlling. But it is not at all controlling. This is so because that case was decided by Justice Brandeis upon the principles of Swift v. Tyson, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865, at a time when it was thought there was Federal common law, but Justice Brandeis himself wiped out the authority of that case, and many others, by overruling Swift v. Tyson in his opinion in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, holding that there is no Federal common law, and that, upon a non-Federal question, the controlling substantive law is the law of the state.

Plaintiff also cites and relies upon Capo v. C–O Two Fire Equipment Co., D.C.N.J.1950, 93 F.Supp. 4. But that case, like many other soundly reasoned cases, including one by our own 8th circuit Court of Appeals, Dixey v. Federal Compress & Warehouse Co., 8 Cir., 132

**470**

F.2d 275, is not based on the substantive law of New York. That case was based on the law of New Jersey, and the Dixey-Federal Compress case was based on the law of Arkansas.

 I am, therefore, of the opinion that the substantive law of New York upon the question, as determined by the last decisions of its highest court above cited, is that if the policy contains provisions authorizing the insurer to settle its liabilities with the insured by a loan, the loan is not payment, but otherwise it is payment. Here, there is no provision in the policy authorizing the insurer to settle its liabilities by a loan, and, therefore, under the controlling law of New York, the "loan" was payment, and, under the holding of the Supreme Court in United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171, the insurer is the real party in interest and must prosecute the suit in its own name.

But even if the loan receipt here did not constitute payment under the controlling substantive law of New York, but amounted only to a loan, the effect would be no more than to enable the insurer to prosecute this action in the name of the insureds—which is what the loan receipt provides for—, and this action is not being prosecuted in the name of the insureds. The loan receipt did not purport to give any right to the insurer to prosecute this action in the name of Rossenfeld.

Moreover, Rosenfeld was a bailee—without, as he clearly has testified herein, any personal or special interest in the subject of this suit—, and, therefore, under the law above pointed out, any suit by him would be for the benefit of his bailors, the insureds—who have, at very least, given over their beneficial interest to the insurer—, and it seems obvious to me that one cannot sue for the benefit of another who has no beneficial interest.

It follows, in my opinion, that plaintiff, Rosenfeld, is not the real party in interest in any view that may be taken

of the matter, and that defendant's motion is well taken, but I am reluctant to sustain it as a motion for a summary judgment, which would deny the insurer the right to come in and prosecute this case in its own name, therefore, I treat the motion as one to dismiss, and as such I sustain it, but with leave to the insurer to come into the case as the plaintiff, within 30 days from this date, and to prosecute it in its own name.