The J. R. WATKINS COMPANY, a Corporation, Appellant,

v.

Lola Velma LOVE, Respondent.

No. 23971.

Kansas City Court of Appeals.

Missouri.

June 1, 1964.

Leonard Rose, Kansas City, for appellant.

Clif Langsdale, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is an action against a surety to recover for merchandise sold to the sureties' principal and not paid for by him. A jury was waived. The court found generally for the defendant and plaintiff has appealed.

As to the scope of appellate review in cases tried upon the facts without a jury, Section 510.310(4) V.A.M.S. provides in part:

"The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses".

To the same effect are the provisions of Supreme Court Rule 73.01(d), V.A.M.R. See also McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698, 703. It is further our duty after review, to render or direct the rendition of such judgment as should have been entered. Maas v. Dreckshage, Mo.App., 244 S.W.2d 397. The rule requiring us to give deference to the findings of the chancellor where credibility of witnesses is involved is of slight importance here, since there is little dispute, if any, as to the facts.

The vital disagreement in this case as we shall soon see, poses a question of law rather than of fact.

Plaintiff, The J. R. Watkins Company, is a corporation engaged in the manufacture of goods and merchandise, primarily for home consumption, which are sold almost entirely by individual door-to-door salesmen or dealers.

By the terms of a written agreement dated October 17, 1955, which recites: "Made at Winona, Minnesota", Mr. Thomas Richard Place of Route 1, Lees Summit, Missouri, as "Purchaser" agreed to buy and the defendant company agreed to sell to him at wholesale prices some of its products. The agreement provided that the "Purchaser" pay for the goods by remitting 60 percent of his receipts from sales. This agreement was to continue in effect until December 1, 1957, but either party could terminate earlier by simply giving written notice to the other party.

On the lower half of this agreement, which consists of only one page, there appears a printed paragraph followed by the phrase in capital letters "SURETIES SIGN HERE WITH INK". This particular paragraph or guaranty provided that in consideration of the company's agreement to sell its products to Mr. Place, the sureties "waive * * * notice of default or of nonpayment, and waive action required, upon notice, by any statute, against the Purchaser; and *we jointly, severally and unconditionally promise, agree and guarantee to pay* for said goods and other articles * * * at the time and place, and in the manner in said agreement provided * *". (Italics ours.) The defendant Lola Velma Love, sister of Mr. Place admittedly signed this document as surety. It was also signed by one George R. Jenkins, who is not involved in this litigation.

On November 11, 1955, the company mailed to defendant by registered mail the following notice: "We are pleased to advise that we have received and accepted the Agreement of Mr. Thomas Richard Place

dated October 17, 1955, and expiring by limitation on December 1, 1957, which is signed by the following as sureties, including yourself: Dr. George R. Jenkins and Mrs. Lola Velma Love. Yours very truly, THE J. R. WATKINS COMPANY Contract Department". A return receipt signed by defendant on November 16, 1955 for this letter was received in evidence and Mrs. Love admitted at the trial that she had received this notification and had signed for it.

It was conceded that the principal, Mr. Place, died on March 15, 1958. The company produced documentary proof from its records that at the time the contract expired and at the time of Mr. Place's death, he owed a balance of $1387.50. By letter dated April 16, 1958, Mrs. Love was notified as to the amount of this balance due and demand was made of her for payment. However, some Watkins products which Place had on hand when he died were delivered to another dealer and Place's account was credited with $230.60, or the value thereof. His indebtedness was reduced further by a $25.00 cash payment and a credit described in the testimony as a "Bird Dog Award"—apparently a reward for recruiting a new dealer. At an earlier trial plaintiff also voluntarily remitted or allowed a further credit of $18.03. Altogether this left a balance due of $1,062.02. At the trial it was conceded or at least not disputed that this amount of indebtedness was true and correct. During the trial the following colloquy took place between the trial judge and counsel:

"THE COURT: Is there really any factual dispute?

"MR. LANGSDALE: Well, I am not going to say 'no' to that, because if some fact is produced—

"THE COURT: All right.

"MR. LANGSDALE: But I say that we haven't objected to these matters.
* * *

"THE COURT: Mr. Langsdale, is there any real contention here except your legal defense?

"MR. LANGSDALE: No".

Finally, after some additional correspondence and failure to collect from Mrs. Love, the company on June 9, 1959, filed suit. The defendant, by her answer, denied generally and alleged that defendant "has never read or heard read or understood" Exhibit 1—the Surety Agreement. At the trial and on this appeal defendant has not denied the correctness of plaintiff's accounting as to the amount due nor has she relied upon fraud or misrepresentation. Rather her defense, both here and below (which is the "legal defense" referred to in the quoted colloquy between the court and counsel) is that defendant is not liable as a matter of law because: (1) The agreement, including the surety part which defendant signed, is a Minnesota contract and not a Missouri contract; (2) being a Minnesota contract, Section 335.77, Minnesota Statutes 1957, Annotated, is applicable and became a part of the contract. We set out the wording of this statute: "The person primarily liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same. All other parties are secondarily liable"; (3) although plaintiff by letter demanded payment of the balance due from the estate of Mr. Place, the deceased principal, it did not file a formal claim against his estate or sue his legal representative, but allowed the Statute of Limitations to operate to destroy such a possible claim. Defendant contends the legal result is that plaintiff thereby lost its right to collect from defendant whom the statute (says defendant) describes as only secondarily liable.

There was an earlier jury trial of this controversy. Counsel for each party in their briefs and oral argument have referred quite frequently to this first trial and defendant has filed a motion asserting, in effect, that the first trial finally adjudicated this dispute. That trial resulted in a verdict for plaintiff in the sum of $1,062.02. Defendant's motion for new trial was sustained for the stated reason that the court instructed that Missouri law applied and refused to instruct that Minnesota law applied. Regardless of the propriety of granting a new trial or the soundness of the stated reasons therefor, there was no appeal and the order became final. The contestant's position was then exactly what it had been before that trial. No issue had been finally adjudicated. In due time the second trial was had before the court with a jury waived. We are in no way concerned with the first trial and nothing that there transpired is before us.

Apparently the trial judge in the jury trial and the trial judge in the jury waived case concluded that the agreement sued upon was a Minnesota contract and that the statute which we have set forth, coupled with plaintiff's failure to sue either Mr. Place during his lifetime or his estate after his death, created a complete defense for this defendant who (defendant says) is only secondarily liable. We can see no other theory upon which the court's findings for defendant could have been based. The amount of Place's indebtedness was undisputed. The fact that defendant signed the surety agreement, received formal notification of its acceptance with her as surety, was admitted and counsel unequivocally conceded, responsive to the court's inquiry, that defendant was relying solely upon this "legal defense".

■ We shall not disagree with all of the trial court's legal conclusions but we cannot concur in the ultimate conclusion and result. Is this particular agreement a Missouri or a Minnesota contract? The instrument itself recites "Made in Winona, Minnesota". It was in Minnesota that the contract was finally completed by the signature of The Watkins Company. We think it is a Minnesota contract although as to performance under it, probably the law of Missouri (place of performance) would apply. Liebing v. Mutual Life Ins.

Co. of New York, Mo. In Banc., 276 Mo. 118, 207 S.W. 230, 232; Brookville Electric Co. v. Utilities Ins. Co., Mo.App., 142 S.W.2d 803, 809. However, we shall not go into that question fully for the reason that so far as a decision here is concerned, we can assume and agree with defendant's contention that this is a Minnesota contract and Minnesota law applies in all respects. But we cannot agree with defendant's position that Section 335.77, Minnesota Statutes, Annotated, supra, applies and since plaintiff has made no real and reasonable effort to collect from the principal, defendant is relieved of liability. We believe this position is untenable in this case for two controlling reasons: First, in our opinion the statute does not apply and, second, defendant, by the terms of the signed surety agreement, became "jointly, severally and unconditionally" liable.

 First: The statute does not apply for the reason that Section 335.77, Minnesota Statutes, Annotated, supra, is a part of the Uniform Negotiable Instrument Act and is included in the chapter on that subject. Section 401.192, V.A.M.S. of the Missouri Statutes on Negotiable Instruments is absolutely identical to Section 335.77 of the Minnesota laws. These statutes and all those in the chapter on Negotiable Instruments have to do with and are applicable only to negotiable instruments. The Surety Agreement here is not a negotiable instrument. It does not come within the definition of such an instrument as set out at the beginning of both the Minnesota and Missouri chapters. It does not contain "an unconditional promise to pay a sum certain" in money and is not negotiable. Even if the document sued on were a negotiable instrument and the statutes were therefore applicable, it would appear to make little difference if the Missouri or the Minnesota statutes were applied. Second: By the specific written terms of the surety or guaranty agreement which defendant signed, she agreed to "waive * * * notice of default or of

nonpayment, * * * and we *jointly, severally* and *unconditionally* promise, agree and guarantee to pay for said goods and other articles * * * at the time and place, and in the manner in said agreement provided". This phraseology makes defendant liable not only jointly with the principal and other surety, but individually (severally) separate and apart from the others. She assumed this obligation and is bound by the terms of the written agreement.

In our opinion Section 335.77 of. the Minnesota Statutes, supra, and .Section 401.192 of the Missouri Statutes upon which defendant's only urged defense is predicated, apply only to negotiable instruments, and since the document sued on is not a negotiable instrument, are not applicable or available as a defense. It is our opinion further that the plain provisions and terms of the agreement or contract which . defendant signed make her liable either alone or with the principal and the other surety. Our sympathies, and we are sure those of the trial judge, are with the defendant. We regret that she must make up for the loss occasioned by her brother, but we cannot uphold her defense as a legally sound defense. Under this evidence and under the law, the judgment should be for plaintiff. It is our duty in a case of this type to enter the judgment which we believe the trial court should have entered.

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff against defendant in the sum of $1,062.02, with interest at 6 percent per annum from and after April 16, 1958.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.