LAUER v. PALMS.[1]

129 671<br>148 ³240

1. APPEAL—INSTRUCTIONS TO JURY—HOW CONSTRUED.
   Statements made by the trial court on overruling a motion for a new trial, in relation to the theory of his charge to the jury, cannot control the charge as given.

2. NEGLIGENCE — BURNED BUILDING — DANGEROUS WALLS — DUTY OF OWNER.
   The owner of a building which has been damaged by fire, but the walls of which remain standing, is bound, within a reasonable time, to take such measures as will prevent the walls from falling under ordinary circumstances, or under such extraordinary occurrences as experience has shown to be likely to arise in the locality, in default of which he is liable to one injured by reason of such neglect while lawfully in the adjacent highway; and the fact that he has instructed competent architects and builders to take the proper precautionary measures, and the accident results from their negligence, will not relieve him from such liability.[2]

[1] Rehearing denied April 22, 1902.

[2] As to individual liability for falling walls or buildings, see note to *Ryder* v. *Kinsey*, (Minn.) 34 L. R. A. 557.

3. SAME—LEASED PREMISES.

Nor can he escape liability because of the fact that the premises were occupied by a tenant, and that, when he undertook to make the necessary repairs, such tenant, or those claiming under him, who were engaged in salving the contents of the building, interfered with his work, and threatened to enjoin him from continuing it; since a landlord has an absolute right to enter and repair the leased premises under such circumstances.

4. PERSONAL INJURIES—DAMAGES—INSTRUCTIONS.

An instruction, in an action for personal injuries of a permanent character, that, if the jury should come to the question of damages, they should take into consideration plaintiff's occupation, his earning capacity at the time of the accident, and the wages he had been earning for some time prior thereto, and from them should determine his probable future earnings, and should "then compute the present value, based upon his expectation of life and his age; discount each annual payment, determining the amount at its present value,"— is not ground for a reversal, where no request was made for a more specific instruction.

Error to Wayne; Rohnert, J. Submitted December 10, 1901. Decided March 18, 1902.

Case by Nicholas Lauer against Francis F. Palms, Michael W. O'Brien, and Clotilde Palms Book, trustees of the estate of Francis Palms, deceased, for injuries caused by the fall of the wall of a building. From a judgment for plaintiff, defendants bring error. Affirmed.

*Edwin F. Conely* and *Orla B. Taylor*, for appellants.

*Bowen, Douglas & Whiting*, for appellee.

MOORE, J. The plaintiff obtained a judgment against the defendants, who have brought the case here by writ of error. A large number of the assignments of error grow out of the charge of the judge, and his refusal to give certain requests of defendants; so that it becomes important to know what the court charged the jury. His charge was as follows:

"This action is brought by Nicholas Lauer against the defendants for damages resulting from an injury which happened to the plaintiff on the 12th day of December, 1899, on Woodbridge street west, by reason of the collapse of the east wall of the so-called Palms or Krolik building. It appears from the testimony that there had been a fire some time previous to the day on which the wall fell. The wall fell December 12, 1899. The fire had taken place on the 24th day of November of the same year. The defendants in this case, as trustees of the Palms estate, were the owners of this building. It also appears that the plaintiff was, on the 12th day of December, and for about a year prior thereto, in the employ of Bloomgarden & Ellenstein, commission merchants, in a building directly adjoining the Krolik building on the east. As I said, the fire happened on the 24th day of November, and left the building in a condition which you will determine from the testimony which has been given here. Defendants were not responsible for the fire; they were not responsible for the condition in which the building was on the morning after the fire; so that, if this accident had happened on the morning after the fire, I should probably have directed a verdict for the defendants; but, as it happened some time after the fire, other questions arise, which are to be submitted to you for determination as questions of fact.

"Although the defendants were not responsible for the condition in which the fire left the building, they, however, did owe a certain duty to the public and to the adjoining owners, and that duty was to correct any dangerous condition in which the building might have been, and, if they neglected or delayed unnecessarily the performance of that duty, they are chargeable with negligence; so that the first question for you to determine is, What was the condition of the east wall of that building on the morning after the fire, and for all the mornings after that up to the 11th day of December,—the day prior to the time that the east wall fell? In this connection, if you find that the east wall was in a safe condition up to the night of December 11th, then defendants would not be chargeable with negligence by reason of any delay in taking down the wall or fixing the building. In determining this question, you will consider all the evidence of the people who have testified, both from personal examination or as to facts in relation to the condition of the wall, and upon

129 Mich.—43.

hypothetical questions based upon facts in the case. If, however, you find that the east wall after the fire, and up to the 11th day of December, was in an unsafe condition, and liable to fall or be blown down (and by being 'blown down' I mean blown down by reason of its not being in a reasonably safe or strong condition to resist the strain upon the supporting timbers, or that it was blown down by reason of its not being of a proper and safe construction, sufficient to resist the elements at all seasons and in all ordinary weather, and under such extraordinary occurrences as are likely to arise in that locality, based upon past experience in that locality), you will find for the plaintiff. I charge you that if the defendants were guilty of negligence in allowing such a wall to stand in a condition which you find was unsafe, either to adjoining buildings or the public on the street, you should find for the plaintiff, if by the exercise of reasonable diligence you believe the defendants could have put the wall in a safe condition at the time it became unsafe, or between that time and the time it fell. I am speaking now of the time between the fire and the 11th of December. An unsafe condition would be such a condition that it would not be able to resist the elements under the ordinary circumstances which might exist in that locality, or under such extraordinary circumstances as might happen in that locality, judging from past experience. That is, if this blow which arose and resulted in the throwing down of the wall caused it to fall because of the weak condition of that wall, which had existed prior to December 11th, these remarks apply. If it was an extraordinary blow, such as experience in that locality would not have forecast as possible, then the liability would not attach. If you believe that the east wall was in a dangerous and unsafe condition, and was liable to fall under such a blow, then such a wall would be a public and private nuisance as to those owning adjoining property; and, if you believe that by reason of such unsafe condition the walls fell and caused this injury, the owner is liable for all the consequences arising therefrom. I am speaking now of a condition existing between the time of the fire and December 11th. I shall come hereafter to conditions which may have existed after December 11th, caused by the falling of the west wall. If you find that, after the fire, the wall was in a safe condition, you will not charge the defendants with anything which might have been done before December 11th to put it in a safer condition.

"It became the duty of defendants, after the fire, to see to it that the premises or walls of this building were in a safe condition,—in such a condition that people would not be hurt therefrom, and to withstand the elements in all ordinary weather, and under such extraordinary occurrences as are likely to happen in that locality, based on past experience. And I charge you, further, that they were not relieved from this duty by the employment of architects or builders, if the architects and builders have been negligent in the performance of their duty. In considering the condition of the wall during that period, and in considering the degree of care that it was necessary for the defendants to exercise in and about the repairing of the building in question after the fire, you have the right to consider that the defendants and their agents were not architects and contractors; also the fact that, immediately after the fire, they consulted competent architects and builders. You are to judge of the competency of these men, and you will consider the fact that they were guided entirely by their judgment as to what was necessary to be done, and acted entirely in accordance with the suggestions of such builders. That is, not being architects or builders themselves, it was the duty of the defendants, under the circumstances, to consult competent architects and builders, and to take such action as was necessary.

"In considering the matter whether the walls were in a dangerous condition after the fire, you have the right to consider that the building was examined by competent architects and masons and builders, who examined it not only with reference to its present safety, but also with reference to its capacity to bear a new roof. In considering the question as to whether the wall was in a dangerous condition, and the diligence of the defendants with reference thereto, you have the right to consider that the plaintiff and other people in buildings adjacent to such building continued their daily occupation as if they considered the said wall in a safe condition, and that not until the west wall fell, and there existed a strong wind, such as occurred on the 12th of December, did anybody apprehend the danger from the falling of said wall.

"If you find that they were ignorant of these conditions, and did not apprehend any danger, you will not consider evidence as to what was done afterwards upon the wall, as bearing upon the question as to what should have been done to secure its safety. Defendants were

only bound to do what appeared at the time necessary to be done, and they were to be guided by competent architects and builders; and if, so guided by competent architects and builders, who were not negligent in the performance of the duty which they owed to the defendants, they did not consider it necessary to shore up said walls, or otherwise proceed to shore or brace up the walls, other than by the existence of the joists which were still there before the falling of the wall, they were not negligent. If, however, the conditions as they existed after the fall were new conditions which arose, and did not indicate prior conditions, they are not to be considered by you in any way as bearing upon this case, or bearing upon the condition of the wall, which would direct the defendants in the performance of any duty.

"The mere fact that the wall fell is no evidence in itself of its defective condition. The mere fact that the wall fell does not fix a liability upon the defendants by reason thereof. It is the duty of the plaintiff to show you that the wall fell by reason of some negligence—some nonfeasance or misfeasance—of the defendants; that they either had some duty to perform which they did not perform, or did something which they ought not to have done, or that they did that which they ought to have done badly. Either one of these things must appear to you before you can attach any responsibility to the defendants. The burden of proof is upon the plaintiff to satisfy you in all these respects. By 'burden of proof' I mean, not where your mind has formed a conclusion, because there the burden has been satisfied; but, if there is a doubt in your mind, the benefit of that doubt is to be given against the person on whom the burden of proof rests. Of course, if your mind is satisfied on a point, there is no doubt, and then no question as to the burden of proof arises. If there is a doubt in your mind as to any fact, that doubt must be cast against the person upon whom the burden of proof rests, and in favor of the person upon whom the burden of proof does not rest.

"If you believe that on the morning after the fire, and continuing up to the 11th day of December, the wall was in an unsafe condition, and that by ordinary care this easterly wall could have been so strengthened as to have prevented this accident, and if you further believe that the wall was not braced in any way, then that constitutes negligence, and the plaintiff is entitled to recover. I say

that upon the theory that you may find that the wall during the period was in an unsafe condition; if you should so find, there is a duty upon the defendants to brace the wall and put it in a safe condition, and they would be chargeable with a result of that neglect, unless there were reasons shown to you why it could not be done, or the accident befell from reasons beyond their control.

"Under the terms of the lease with the Kroliks, if the wall was in an unsafe condition, the defendants had a right to enter upon the land, and they should have insisted upon the right until they were restrained by the court, to put the building in condition. If there was a dangerous condition existing there, they had a right to enter at once, and if the wall, during that period, up to the 11th day of December, was not in a safe condition, it was their duty to go in and put it in a safe condition.

"If you determine that the wall was in a safe condition up to the 11th day of December, and that it was only put in an unsafe condition by reason of the falling of the west wall on the morning of the 12th of December,—that is, if you believe there was sufficient bracing to hold this wall, and if you believe that this bracing became insufficient or had been carried away by any other means growing out of the falling of the west wall, and that the falling of the east wall resulted from the fall of the west wall, putting it in an unsafe condition, provided it was safe except for that happening,—then the defendants are only chargeable with a duty arising from that time; that is, from the time when the wall became dangerous; and, under that condition of affairs, it is for you to determine what reasonable care and diligence the defendants might have exercised to have put that wall in a safe condition between the time of its becoming unsafe and the time it fell. If you find that the time was too limited to give them an opportunity to put the east wall in a safe condition after the fall of the west wall, then the defendants cannot be chargeable with negligence. If, however, you find that there was an opportunity for their receiving information of the condition of affairs, and after receiving such information they had the means to prevent the falling of the wall before it did fall, which was some time between 9 and 10 o'clock in the morning,—if you think the wall could have been braced by the exercise of reasonable diligence on the part of the defendants before that time,—then they are chargeable with negligence in not having exercised that diligence.

If, however, the time was so short that they could not receive information or do the work, then they are not chargeable with negligence in this matter.

"I will leave with you the question whether the plaintiff was guilty of contributory negligence. If he had such knowledge of these conditions that a prudent man would have exercised care to avoid the danger, why, then, he is guilty of contributory negligence, and cannot recover.

"If you find for the defendants, it is of no cause for action. If you find for the plaintiff, you reach the measure of damages, and you will first determine his earning capacity at the time of the accident. You will also consider his occupation; the wages he had been earning for some time prior thereto. Having determined that, you will determine what he was liable to earn in the future; then compute the present value, based upon his expectation of life and his age. I think his age is 27 years. You will discount each annual payment, and you will determine the amount at its present value; and you will also give him such an amount as will compensate him for any pain and suffering which he has had in the past, resulting from the injury, and which may come to him in the future.

"I will say this, further, to you: That the defective condition of the wall is some evidence, and may be considered by you in connection with your consideration of all the facts concerning its condition. It is evidence in the case for you to consider. But the mere fact of the defective condition of the wall does not establish negligence. You may simply consider it in connection with other testimony. You will consider the testimony of all the witnesses, and believe them as you see fit, and as you think they are worthy of belief. Consider their testimony, and consider the testimony of the experts. Consider the opportunity which the experts had, and their character and ability, and their standing in the community in their line of work. Consider it in connection with the statements which they have made as to the condition of affairs, so far as they have examined the walls. The conclusion which you form in your minds may be influenced more or less by the testimony of the experts, as far as they have testified, and have had an opportunity for knowing the conditions as they existed at the time of the fall. You are to determine the character of their testimony, and

what weight is to be given to it, based upon their experience and ability and reputation, and based, further, upon the opportunity which they had to examine the wall, and the examination which they did make of the work, and the detailed statements by them of the examinations upon which they formed their opinion. That is all, gentlemen. You may follow an officer."

The defendants owned a building occupied by the wholesale dry goods firm of A. Krolik & Co., facing on Jefferson avenue, and running through to Woodbridge street. This building had a frontage of about 43½ feet on Jefferson avenue, and was about 200 feet deep, extending through to Woodbridge street. It was constructed of brick; was five stories and a basement high in front, and six stories in the rear, on Woodbridge street. Adjoining the Palms building on the east, facing on Jefferson avenue, and running back to an alley running east and west from Griswold street, between Woodbridge and Jefferson, and ending at the easterly wall of the Palms building, was a building occupied by C. H. Ritter & Co. The Ritter building was considerably lower than the Palms building. South of the alley, and adjoining the southeasterly or easterly wall of the Palms building, was a comparatively low four-story building owned by the Hyde estate. It was much lower than the Palms building, was 80 to 90 feet deep, was built of brick, and was occupied by the firm of Bloomgarden & Ellenstein, and on the upper floors, in part, by A. Krolik & Co. Adjoining the Palms building on the west was the Strong-Lee building, occupied by the Strong, Lee & Co. dry goods firm, extending from Jefferson avenue through to Woodbridge street. The westerly wall of the Palms building projected above the roof of this building 20 feet or more.

On the night of November 24, 1899, a fire broke out in the Palms building. It started in the upper stories of the building. It was a hot fire. The floor of the sixth story was nearly destroyed, as was the roof. The testimony of a number of witnesses was introduced, tending to show

the effect of the fire and water on the brick walls, and that the result of the fire and the force of the strong streams of cold water upon the hot walls was to leave the side walls in a dangerous condition. It was the claim of the plaintiff that the fire left the walls in a dangerous condition, and the defendants, instead of promptly repairing them, allowed them to remain so until the night of the 11th of December, when a section of the west wall fell, followed by the falling in the forenoon of the 12th of a section of the east wall upon the roof of the Bloomgarden building, carrying down the roof and the floors of that building, and forcing the front walls of the building into the street, covering the plaintiff, who was near the curb, in the street, with débris, and inflicting upon him injuries from which he will never recover. It is claimed this occurred when the wind was no higher than might be anticipated at that time of year. It was the claim of defendants that the fire did not leave the walls in a dangerous condition; that they at once employed two competent builders and a competent architect to examine them, who pronounced the walls safe; that they instructed the builders to rebuild so soon as it could be done; that they commenced their work, when they were prevented from completing it by a wreckage and salvage company to whom Krolik & Co. had sold the goods; that the falling of the walls was caused by a very high wind; and that defendants were not negligent, and should not be held liable.

After the verdict a motion was made for a new trial. In overruling the motion the court said:

" While my charge, in so many words, did not state that the owner of land abutting a street was an insurer to the wayfarer upon the street as to the safety of the structures upon his land, yet that is the spirit in which the charge was given. The Supreme Court has substantially declared the owner, under such circumstances, to be an insurer. * * * Therefore I refuse to grant the motion."

Counsel, in their brief, say:

"It was and is our contention that the defendants were not insurers, and were only chargeable with the damage suffered by the plaintiff in case the evidence showed that they did not exercise the diligence that ordinarily prudent men would have exercised under like circumstances. We also contended that the evidence, as a whole, established that they had exercised the diligence that ordinarily prudent men would have exercised under like conditions, because they had acted under the circumstances as they appeared to them after having made reasonable and proper effort to ascertain what the circumstances actually were. * * * The rule is one of diligence, not insurance. No man can be justly charged with having neglected that of which he was ignorant, or which he did not discover after making reasonable and proper efforts to ascertain the facts."

Of course, the case is to be determined, not by what was said by the trial judge in overruling the motion for a new trial, but by what was done and said during the progress of the trial.

Very exhaustive briefs have been presented by counsel, in which a very large number of authorities are cited. An examination of them shows a want of harmony in the decisions. The important questions, however, are not new in this court. The case of *Wilkinson* v. *Detroit Steel & Spring Works*, 73 Mich. 405 (41 N. W. 490), was, in principle, much like this one. In that case a portion of a building fell. It was claimed, as here, that a competent architect and competent builders had been employed, and that defendant was guilty of no negligence, and was not liable. In speaking for the court, Justice CHAMPLIN said:

"Complaint is made by counsel for defendant to the charges given by the court aside from those contained in the defendant's requests. He maintains that this is a case where the doctrine relative to independent contractors should be applied, and if defendant exercised reasonable care in selecting the architect who furnished the plans, and in employing competent builders, it is not liable

for the injury occasioned by the falling structure.  *  *  *

"But assuming, for the purposes of this case, that Candler Bros. were independent contractors, and engaged to build and finish it according to certain specified plans furnished to them by defendant, and did so, still I do not think the defendant was relieved from liability under the facts of this case.

"The general rule, in its broad sense, is well stated in 2 Thomp. Neg. p. 899, as follows:

" ' One who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work not in itself unlawful, or attended with danger to others, *according to the contractor's own methods,* and without his being subject to control except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractors, or his servants, committed in the prosecution of such work.'

"And see section 25, pp. 902, 903, same author.

"There are well-recognized exceptions to 'the general rule, as:

"1. Where the contractor is not left to pursue his own methods of accomplishing the result, but is furnished by the proprietor with plans, which he agrees to execute, and the injury results from a defect in the plans.

"2. When the work completed is on the proprietor's own land, and, as completed, is a nuisance, the party who employed another to do it is responsible for all the consequences, for then the maxim, '*Qui facit per alium facit per se,*' applies, as well as the maxim, 'So use your own as not to injure another's property.'

"These exceptions appear to be supported by all the modern authorities upon the subject.  Thus, Andrews, J., in *King* v. *Railroad Co.,* 66 N. Y. 185 (23 Am. Rep 37), says:

" ' ' Whoever directs the doing of an act which, when done. will necessarily be the creation of a nuisance, will be personally responsible for a special injury resulting therefrom to third persons. whether the act is performed by a servant or contractor.'

"And Peckham, J., in *Bensen* v. *Suarez,* 28 How. Prac. 511, 19 Abb. Prac. 61, says:

" ' An owner has no right to erect a nuisance on his own land to the injury of his neighbors.  He cannot erect so weak and unsafe a building that it shall fall in ordinary times from its mere insecurity and insufficient strength, and thus injure the building or property of his adjoining neighbor, without being responsible for that injury.'

"It is unnecessary to multiply citations, for the reason that the principle is founded in reason and justice. If this building fell from its inherent weakness of construction, though built according to the plan, was it a nuisance? It was located between, and contiguous to, two public highways. It fell, after being erected four or five months, in a calm day, without any apparent cause, internal or external, except through its own weakness and inability to stand longer. I quote from Wood, Nuis. [1st Ed.] § 113:

" ' While a man has a right to follow his own tastes and inclinations as to the style and character of the building that he will erect upon his own land, yet he has no right to erect and maintain there a building that is dangerous by reason of the materials used in or the manner of its construction, or that is in a ruinous condition, and liable to fall and do injury to an adjoining owner or the public. Such a building on a public street is a public nuisance, and is a private nuisance to those owning property adjoining it; and if the building falls and inflicts injury upon the adjoining owners or their property, or to any one who is lawfully in its vicinity, the owner is liable for all the consequences that ensue therefrom.'

"*   *   * The law imposed upon the defendant, when it exercised its lawful right of constructing a rolling mill upon its premises adjoining a public highway, the duty towards the general public, having the right of passing along or lawfully being in that highway, to so erect it as to render it reasonably safe, and sufficiently strong, not only to resist the strain upon the supporting timbers of the roof, but strong enough to support the roof at all seasons, in all ordinary weather, and also under such extraordinary occurrences as were likely to arise in that locality, based upon past experience. And this duty cannot be avoided by employing an independent contractor to furnish the material and perform the work. Here, if the testimony is believed, was a trap, constructed according to defendant's plans, dangerous to human life, and liable at any time to fall upon and injure persons or property in the highway. It was a dangerous nuisance, and was being maintained by the defendant. It cannot escape liability by saying: ' It was built according to plans which I procured, by a person whom I employed. I acted in good faith and with reasonable care in selecting my architect and builder, and therefore I have discharged my whole duty in the matter.' The reason why this is not a sufficient answer is plain.

The injury does not arise from the act of the contractor during the performance of a work over which defendant had no control. It has employed a man to do a lawful thing in an unlawful manner. It employed him to construct a building which, when done, necessarily resulted in the creation of a nuisance. It not only directed the act to be done, but it maintained the nuisance until it fell and did the injury complained of. The charge of the court proceeded upon the wrong basis as to excusing liability in a case like this. He should have instructed them that if the building was so constructed by defendant, or through its directions, as to be insecure and unsafe, and of such inherent weakness as to fall without external or internal forces acting upon it, other than the ordinary forces to which it would be subject in the locality, and the business carried on in such building, it would be a nuisance, and the defendant would be liable for any injury caused thereby to any person lawfully in the public highway. The obligation to construct a building that would be safe and secure was primary with the defendant, and could neither be delegated nor excused by employing one person to prepare plans, and another person to do the work, and resigning all control and responsibility into his hands. The exercise of reasonable care in the creation or maintenance of a nuisance can never be an absolute defense to an action for an injury occasioned thereby."

*Steppe* v. *Alter*, 48 La. Ann. 363 (19 South. 147, 55 Am. St. Rep. 281); *Sessengut* v. *Posey*, 67 Ind. 408 (33 Am. Rep. 98); 1 Wood, Nuis. §§ 109, 118. See, also, *Barnowsky* v. *Helson*, 89 Mich. 523 (50 N. W. 989, 15 L. R. A. 33); *Detzur* v. *Brewing Co.*, 119 Mich. 282 (77 N. W. 948, 44 L. R. A. 500).

In the case at bar no contract had been given, though the architect and builders had been told to do what was necessary to be done. As before stated, it was the claim of the defendants the walls were not dangerous, but the fall was caused by an unusual wind, and testimony was given tending to support this view. We have already stated the claim of the plaintiff. The opinion of Justice Champlin, from which we have quoted, not only indicates the duty of the owners of the building, but it also

decides that duty cannot be delegated to another so as to excuse the owner for a failure to perform it. See, also, Whart. Neg. § 184; *Sessengut* v. *Posey*, 67 Ind. 408 (33 Am. Rep. 98); *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572).

In *Deford* v. *State*, 30 Md. 179, it is said:

"But, although it may be that Deford is not liable for the acts of these parties by reason of any such relation as master and servant, it does not follow that he may not be responsible for the consequences resulting from the defective work allowed to be done by them. The wall was in course of erection on his premises, by his sanction, under his contract, and for his use and benefit. It was immediately fronting on a public street in a large city, and, if the testimony offered on the part of the plaintiff be true, it was constructed in a most defective and dangerous manner,—so much so that it excited the alarm and apprehension of hundreds of people as they passed, and caused them to avoid the pavement in its immediate front. If this be so, it certainly constituted a nuisance, for which Deford would be liable. And the fact that the wall was erected by others, under contract, and to whom he did not bear the relation of master, will not excuse him; for, as was said by Lord Campbell in *Ellis* v. *Gas Consumers' Co.*, 2 El. & Bl. 767, it is a proposition absolutely untenable that in no case can a man be responsible for the act of a person with whom he has made a contract. If the contractor does the thing which he is employed to do, the employer is responsible for that thing, as if he did it himself. And in all cases where a party is in possession of fixed property, he must take care that it is so used and managed that other persons shall not be injured; and whether it be managed by his own servants, or by contractors or their servants, makes no difference in respect to his liability. 'If a man has anything to be done on his own premises, he must take care to injure no man in the mode of conducting the work. Whether he injures a passenger in the street, or a servant employed about his work, seems to make no difference.' *Rapson* v. *Cubitt*, 9 Mees. & W. 715."

See the cases cited in this opinion; *Evans* v. *Murphy*, 87 Md. 498 (40 Atl. 109); *Worthington* v. *Parker*, 11 Daly, 545; *Sulzbacher* v. *Dickie*, 51 How. Prac. 500.

The last-named case is instructive upon another branch of the case. It is claimed that, as the builders were prevented from continuing their work by the wreckage and salvage company to whom Krolik & Co. had sold the goods, defendants are excused for not prosecuting their work during that time. The testimony on the part of the defendants tends to show that the builders were interfered with by Krolik, and that the wreckage and salvage company threatened them with an injunction if they continued their work. This is denied by Mr. Krolik. In *Sulzbacher* v. *Dickie, supra,* it is said:

"The defendant, Dickie, as the owner of the building, had a right to put on a new roof, to prevent his building going to ruin; a landlord having the right, during the tenancy, to enter and make such permanent repairs as are essential to prevent waste, and indispensable to the due protection and preservation of his reversionary interest. 1 Tayl. Landl. & Ten. § 174; *Proud* v. *Hollis,* 1 Barn. & C. 8."

Not only has the landlord a right to do what is necessary to protect his interest in real estate seriously injured by fire, but if, as a result of the fire, the walls are so weakened as to become a source of danger to persons passing upon the street, it is the duty of the owner to enter upon the building and make such repairs as shall be necessary. It is not believed any court would enjoin the owner from performing this duty. We approve what was said upon that subject by the trial judge in his charge to the jury. *Bensen* v. *Suarez,* 28 How. Prac. 511, 19 Abb. Prac. 61.

Complaint is made about the charge of the court in relation to the question of damages. The mortality tables were introduced in evidence. The age of the plaintiff was shown, and his earning capacity. His injuries are of a permanent character. No written request was preferred by counsel upon the question of damages. It was not suggested to the judge that his charge left out any essential thing upon that subject. While it might have been well to instruct the jury more in detail, we cannot say the court erred in his charge.

A number of errors are assigned upon the admission of evidence. We have examined them, but do not think it necessary to discuss them. The case was carefully tried. The rule of law as stated by the judge substantially followed the opinion of Justice CHAMPLIN in *Wilkinson* v. *Detroit Steel & Spring Works, supra.*

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.