## CHESAPEAKE & O. RY. CO. v. CLAYTON & LAMBERT MFG. CO.

### No. 11169.

United States Court of Appeals
Sixth Circuit.

April 13, 1951.

———◆———

LeWright Browning, Ashland, Ky., Le-Wright Browning, of Ashland, Ky., on brief; Browning & Gray, Ashland, Ky., of counsel, for appellant.

W. H. Dysard, Ashland, Ky., W. H. Dysard, of Ashland, Ky., on brief; Dysard & Dysard, Ashland, Ky., of counsel, for appellee.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

Appellant, The Chesapeake and Ohio Railway Company, brought this action in the State court to enforce contribution from the appellee, Clayton & Lambert Manufacturing Company, as an alleged joint tort-feasor, under the provisions of Kentucky Revised Statutes, § 412.030. It was removed to the U. S. District Court, and, following a hearing, was dismissed by the District Judge.

Appellee, a manufacturing company in Detroit, Michigan, entered into certain contracts whereby it undertook the manufacture and production of ordnance material for the United States Navy. By agreement dated May 22, 1942, it leased from the American Rolling Mill Company, hereinafter referred to as Armco, a large steel plant west of Ashland, Kentucky, for use in the performance of these contracts. This plant was situated between the tracks and right of way of the appellant and the Ohio River, with the right of way paralleling the property on the south. The appellant operated three main line tracks, over which during the times involved there was an average movement of 120 trains during each 24-hour period. U.S.Route No. 23 was immediately south of and parallel with the tracks and right of way.

By the terms of the above agreement Armco obligated itself to provide a right of way between the leased premises and U. S. Highway No. 23, which access road would cross the appellant's property and track at the location of an existing private crossing which Armco had the right to use. Armco requested the appellant to put the private crossing in condition for the contemplated use, but because of the proximity of the crossing to certain block signals on the tracks, with resulting traffic complications, it was suggested by the appellant that the proposed crossing be located at a point approximately 1,250 feet west of the existing crossing. The appellant agreed that if the suggested change was made it would construct at its own expense the proposed new crossing together with a roadway from the original location to the proposed location. The suggested change was approved by Armco. The new private crossing and access road were completed on February 23, 1943. The appellee commenced operations in the leased plant in May 1943.

The new crossing was used almost exclusively by officials and employees of the appellee and persons transacting business with it. By an understanding between appellee and the Blue Ribbon Lines, a common carrier by bus, motor buses were operated by the Bus Company between Ashland and the plant, approximately 40 buses per day passing over the crossing. After the plant operation reached its capacity the number of persons employed there was between 1,500 and 2,500, approximately all of whom passed over the crossing daily, on foot, or in private motor vehicles, or in buses. Following the beginning of the

plant operations, complaints concerning the absence of protective devices at the crossing began to be made to the appellee, who relayed them to the appellant. At first the Bus Company declined to go over the crossing, but later upon demand of the Office of Defense Transportation, at the instance of the appellee, provided service over the crossing, access road, and up to the plant. The appellee ascertained that the Navy would pay for crossing protection, and after conferring with the appellant, an agreement was reached on October 5, 1943 under which such crossing protection would be furnished by appellant through its employees 24 hours per day, with appellee reimbursing appellant for the expense at a rate not to exceed $400 per month. This agreement was later reduced to formal contract form dated November 12, 1943, terminable by either party upon thirty days' notice in writing by which the appellant licensed and permitted the use of its private roadway as a means of ingress and egress to and from the Armco property.

Watchman service was installed at the crossing on November 16, 1943. The watchmen were employees of the appellant and were selected, supervised and controlled by it. Their names were not given to the appellee. The appellee had no control over the watchmen as to how they would accomplish their work or otherwise. The monthly bills for the amount of wages paid by appellant were presented to and paid by the appellee. The bills contained a 10% supervision and accounting charge.

At 6:32 a. m. on January 10, 1945, a motor bus of the Blue Ribbon Lines, carrying at least 60 employees as passengers, and an engine and caboose, being operated by the appellant, collided at the crossing. Two of the passengers sustained injuries from which death subsequently resulted and other occupants sustained personal injuries of varying extent. Thereafter damage suits were filed in the State court against the appellant and the operator of the Blue Ribbon Lines. One suit went to trial and judgment. The suits and other claims for personal injuries were based upon alleged joint and concurring negligence of the watchman on duty at the crossing, of the employees in charge of the train, and of the driver of the bus. The suits and claims were settled by the appellant and the Blue Ribbon Lines, the appellants paying $42,753.67 in doing so.

The stipulation states that the settlements by the appellant were made in good faith, in accordance with compromise agreements, and were reasonable in amount. Appellant had advised appellee at the time of the accident that in its opinion appellee would be liable for contribution in connection with any loss which appellant might sustain as a result of the accident. Demand for such contribution was later made, and following refusal of appellee to so contribute, appellant filed this action for $21,376.83, being 50% of the amount so expended by it.

At common law there was no right of action for contribution between joint tortfeasors, who were in *pari delicto*. This common law rule was changed by legislative act in Kentucky, formerly § 484(a) Kentucky Statutes, now carried as § 412.030 Kentucky Revised Statutes, reading—"Contribution among wrongdoers may be enforced where the wrong is a mere act of negligence and involves no moral turpitude." Under the statute, if the amounts paid by a wrongdoer are paid pursuant to compromises, made honestly and in good faith, a prima facie right to contribution is established, with the legal right in the other to show the non-existence of liability or the absence of a good faith, reasonable settlement. However, a joint tort-feasor can not enforce contribution of another against whom the person injured by the tort has no cause of action. Consolidated Coach Corp. v. Burge, 245 Ky. 631, 54 S.W. 2d 16, 85 A.L.R. 1086. In order for appellant to enforce contribution in the present case, it must show that the injured passengers had a cause of action against the appellee. Obviously, the appellee was not chargeable with the negligent operation of the bus or with the negligent operation of the engine and caboose, and any liability upon its part would have to arise out of a failure on its part to properly protect the crossing, which in turn would necessarily rest upon a duty to so protect the crossing.

Unless such a duty is established, appellant's case fails.

The District Judge, in dismissing the action, was of the opinion that the case turned solely upon the one proposition, whether appellee owed its employees a duty to see them safely across the railroad tracks in going to and coming from their employment, which duty would have to be based upon the law of master and servant, which requires the master to furnish the servant a reasonably safe place to work. He ruled that the "safe place to work" doctrine did not extend to the employees riding to work in a public bus on a roadway and railway crossing at such a distance from the employer's plant, and that appellee was accordingly not a joint tort-feasor from whom contribution could be enforced. On this appeal, appellant concedes that the "safe place to work" rule has no application, but contends that the District Court based its ruling upon a non-existent issue.

The case is argued to us on a different and independent theory. Appellant contends that the appellee, having provided this crossing as the sole means of ingress and egress to and from its plant, thus inviting its employees and other business visitors to use such crossing, was obligated to exercise ordinary care for the safety of such invitees, including their safety while using the crossing; that this duty was a non-delegable duty; and that the appellee was responsible for the negligence of the agency chosen by it to perform this duty. It concedes that the appellant was liable for the negligent act of the watchman, who was its employee, but contends that the responsibility for the conduct of the watchmen was a joint responsibility, thus giving rise to the liability of both appellant and appellee as joint tort-feasors.

Appellant cites a number of Kentucky decisions and other authorities holding that the owner or occupant of property owes to an invitee or business visitor the duty to use ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation. The rule is well settled, but as so stated and as usually applied it refers to hazards existing on the property itself, such as slippery floors, or defective stairs, or escaping gas, encountered by the invitee after he has entered onto the property. The rule in its general application does not cover hazards encountered by the invitee on the street or highway, even though adjacent thereto, in attempting to reach the property and before entrance thereon. Gates v. Kuchle, 281 Ky. 13, 134 S.W.2d 1002; Gabriel v. Bank of Italy, 204 Cal. 244, 267 P. 544, 58 A.L.R. 1039. The cases cited are not applicable to the precise question now before us.

Appellant submits several theories upon which such joint liability exists. It contends that the crossing was a private crossing, imposing no duty upon the railroad company, under the general rule in Kentucky, to install or maintain any crossing safeguards, such as gates, lights, bells or watchmen, Stull's Adm'x v. Kentucky Traction & T. Co., 172 Ky. 650, 189 S.W. 721; Chesapeake & O. Ry. Co. v. Hunter's Adm'r, 170 Ky. 4, 185 S.W. 140; Dietz' Adm'x v. Cincinnati N. O. & T. P. Ry. Co., 296 Ky. 279, 176 S.W.2d 699, and that the duty to guard such a private crossing, which was the sole means of ingress and egress to the plant, was upon the appellee; that the appellee as the dominant owner and user of the easement over a private crossing had the duty to maintain it in a safe traveling condition; Spalding v. Louisville & N. R. Co., 281 Ky. 357, 136 S.W.2d 1; that the arrangement under which watchman service was provided was a joint undertaking of both appellant and appellee; Blair v. Durham, 6 Cir., 134 F.2d 729; Hathaway v. Porter Royalty Pool, Inc., 296 Mich. 90, 295 N.W. 571, 138 A.L.R. 955 (with opinion by Judge McAllister, now a member of this Court); that the duty to protect the crossing was a non-delegable duty which was not discharged by the employment of some one else to perform it; Lauer v. Palms, 129 Mich. 671, 89 N.W. 694, 58 L.R.A. 67; Restatement, Torts. Sec. 877; that the watchman at the time of the accident was acting as the agent of the appellee, although he was employed by and paid by the appellant; Louisville, H. & St. L. Ry. Co. v. Illinois Central R. Co., 93 S. W. 4, 29 Ky.L.Rep. 265; Schulte v. Louis-

ville & N. R. 'Co., 128 Ky. 627, 108 S.W. 941. There may or may not be merit in some of these contentions, when applied to the exact facts of this case, but under our view of the case they become immaterial.

We are of the opinion that liability on the part of the appellee to the injured parties, even if established, would not entitle appellant to the contribution from appellee which it now seeks. The Kentucky statute changed the general common law rule which barred contribution between joint tort-feasors who were in pari delicto, but it made no change in the exception to that general rule which allowed the right of indemnity where the person seeking it and the person from whom it was sought were not in pari delicto, as where the party who was compelled to pay the damages was less culpable than the other wrongdoer, although both were equally liable to the person injured. Under that exception to the general rule, the party who was the active wrongdoer or primarily negligent could be compelled to make good to the one secondarily liable any loss he sustained. Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165; Middlesboro Home Telephone Co. v. Louisville & N. R. Co., 214 Ky. 822, 284 S.W. 104; Washington Gas Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712. In the present case, the contract between the appellant and the appellee imposed upon the appellant the primary duty of safeguarding the crossing. The appellee had no participation in the selection, employment, or supervision of the watchmen employed by the appellant and assigned by it to the performance of this duty. The accident was not the result of any act on the part of appellee. As between the appellant and appellee, the appellant was the active wrongdoer; the appellee being constructively liable, if at all, by operation of a rule of law. If appellee had been required to pay a judgment it would have a right of indemnity for the full amount so paid against the appellant. Such a right necessarily negatives a right of contribution against it.

The judgment of the district Court is affirmed.