**TRANSIT CASUALTY COMPANY, a Body Corporate, et al., Appellants,**

v.

**TRANSAMERICA INSURANCE COMPANY, Successor to American Surety Company of New York, et al., Appellees.**

**No. 18747.**

United States Court of Appeals Eighth Circuit.

Dec. 20, 1967.

Patrick A. O'Doherty, Baltimore, Md., for appellants; George P. Bowie, St. Louis, Mo., and John D. Schneider, St. Louis, Mo., were on the brief.

Frank X. Cleary and Daniel T. Rabbitt, Jr., of Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, Mo., for appellees; J. C. Jaeckel, St. Louis, Mo., was on the brief.

Before VAN OOSTERHOUT, MEHAFFY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This is an appeal in a diversity action brought in the Eastern District of Missouri. A leased building, located in Detroit, Michigan, was damaged in a windstorm. Thereafter, it was extensively damaged in a fire which occurred while the wind damage was being repaired. Transit Casualty Company [1] paid its insured, the lessee, $255,000 for the fire loss and brought action against the Transamerica Insurance Company [2] al-

---

1. Other tenants in the building were insured by Selective Insurance Company, an Ohio corporation. Selective was a plaintiff in this action along with Transit Casualty Company, a Missouri corporation. The additional insurer and lessees will not be referred to separately in this opinion. It should be noted that the total loss paid by Selective and Transit was $308,000.

2. Transamerica Insurance Company was a successor to the American Surety Company of New York and Firemen's Fund Insurance Company, both California corporations; The Grain Dealers Mutual Insurance Company, an Indiana corporation; and, Zurich Insurance Company, United States Branch, a New York corporation.

leging that Transamerica had elected to repair the windstorm damage, that the negligence of the subcontractor performing the work caused the fire, and that Transamerica was liable for the damage caused by the subcontractor's negligence. The case was submitted to the jury and a verdict was returned for the defendant. Transit's motion for a new trial was denied. It appeals. We remand for a new trial.

I. *It was an error to permit the subject of reinsurance to be interjected into the law suit by the defense.*

During the cross-examination of an officer of Transit, the defense counsel interjected the fact that Transit had reinsurance treaties with other companies:

"Q. * * * [W]as there any arrangement with any other company made by Transit Casualty to reduce its loss, reinsurance or excess insurance?

"Mr. O'Doherty: I object.

"The Court: Be overruled.

\* \* \* \* \* \*

"Mr. O'Doherty: * * * [T]he court has indicated here that it's going to allow defense counsel to inquire into reinsurance treaties—

\* \* \* \* \* \*

"Mr. O'Doherty: * * * I feel it is prejudicial to this plaintiff's case to allow Mr. Cleary to interrogate this witness regarding reinsurance treaties, which every insurance company in the United States carries on * * * all of its business written, * * * but if it's the question of whether we have the right to bring the action, that's not in dispute in this case. It was never raised by any affirmative pleading, * * *

"Mr. Cleary: I would like the record to show that Transit Casualty is one of two plaintiffs here and it is suing in an effort to recover from this jury [$308,000]. Now, I'm interested in

ascertaining, and I have a right to know, what loss it actually sustained. Companies, of necessity, or necessarily, or however, it was described, carry excess or reinsurance on a loss, some of them do, some of them don't. *Certainly, the real party in interest here is not Transit Casualty Company if it only sustained, say a $50,000 loss, and I'm entitled to inquire into that in view of the pleadings here.*

"The Court: I don't think it's a question on an affirmative defense; it's a question of defense period. You people have the burden of doing the other. I'll overrule the objection." (Emphasis added.)

As this colloquy indicates, the defense justified interjecting the issue of reinsurance on the grounds that Transit was not the real party in interest. It has, for all practical purposes, abandoned this argument on appeal conceding, in effect, that the evidence was irrelevant. It now argues that the evidence, though irrelevant, was not prejudicial.

■ We do not agree. The interjection of the issue of reinsurance was prejudicial error under either Rule 61, Fed. R.Civ.P., or Missouri case law.[3] E. g., Whitman v. Carver, 337 Mo. 1247, 88 S. W.2d 885 (1935); Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673 (1933).

In *Olian*, the Court stated:

" * * * [T]he fact that the liability of a defendant in a tort action is covered by insurance will, in the minds of the average jury, not only justify a verdict for plaintiff but a very generous assessment of damages as well. * * * With this in mind, plaintiffs' counsel in actions such as this, and we speak generally, cannot resist the temptation of bringing into the view of the jury an insurance company, a corporate entity that is able to discharge, and whose business it is to discharge, any liability that they may assess for defendant's wrongdoing. * * * "

[3]. Whether *Erie* requires that we apply the state prejudicial error rule rather than the federal has not been decided in this Circuit. See, Joplin v. Denver-Chicago Trucking Co., 329 F.2d 396 (8th Cir. 1964).

Id. at 677.

The reasoning of *Olian* is applicable here. The fact that Transit was reinsured and stood to bear only five percent of this loss is a fact that obviously would impress the jury, and might well lead it to return a defendant's verdict, as the alternative to such a verdict, in its mind, could well be a windfall to Transit.[4]

If counsel, interjecting the issue of insurance, demonstrates that it was done in good faith and was slight, a new trial might not be required. Pitcher v. Schoch, 345 Mo. 1184, 139 S.W.2d 463 (1940); Carter v. Rock Island Bus Lines, 345 Mo. 1170, 139 S.W.2d 458 (1940). Here, however, the interjection was neither in demonstrable good faith nor slight.

The reasons now advanced by the defendant as to why evidence of reinsurance was not prejudicial are: first, the length of jury deliberations do not indicate that it was impassioned against the plaintiff; second, the instructions admonished the jurors to decide the issues fairly and without regard to who the parties were; finally, the error, if any, went only to the issue of damage and as the jury decided against Transit on the issue of liability, it was not prejudicial.

The fact that the jury deliberated at length in this long and difficult case does not, in our view, substantiate the defendant's position that the jury was not prejudiced by the irrelevant evidence. In our view, it is more likely that the irrelevant evidence confused the jury and thus prolonged its deliberations. But cf., Sheffield Steel Corp. v. Vance, 236 F.2d 928 (8th Cir. 1956).

Even if the jury instructions had clearly admonished the jury to disregard the issue of reinsurance,[5] the error is, nevertheless, prejudicial. Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961 (1938) (en banc); Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538 (1934); Olian v. Olian, supra; Lindsey v. Rogers, 220 S.W.2d 937 (Mo.App. 1949); Page v. Unttereiner, 106 S.W.2d 528 (Mo.App.1937). But cf., Robinson v. McVay, 44 S.W.2d 238 (Mo.App.1931).

Finally, the argument that the evidence as to reinsurance went only to the issue of damages is neither realistic[6] nor supported by the case law. Whitman v. Carver, supra; Olian v. Olian, supra; Hanna v. Butts, 330 Mo. 876, 51 S.W.2d 9 (1930); Henry v. Tinsley, 240 Mo.App. 163, 218 S.W.2d 771 (1949). Cf., Walton v. United States Steel Co., 362 S.W.2d 617, 627 (Mo.Sup.1962) (dictum); Taylor v. Kansas City Southern Ry. Co., 293 S.W.2d 894 (Mo.Sup. 1956); Davis v. Gould, 234 Mo.App. 42, 131 S.W.2d 360 (1939).

**II.** *It was an error to refuse to submit Count II to the jury.*

Transit alleges that the defendant elected to repair the windstorm damage,

4. The instructions to the jury, in our view, left it to the jury, in the event of a plaintiffs' verdict, to award 100% of the amount paid by Transit or only 5% of the amount.
"The court further instructs the jury that if you find the issues in favor of the plaintiffs you will assess damages *in such an amount as you find the plaintiffs were reasonably and fairly damaged as a direct result of the fire mentioned in evidence.*" (Emphasis added.)

5. The defendant also argues that the issue of reinsurance was taken from the jury by the following instruction:
"The court further instructs the jury that if you find and believe from the evidence that adequate precautions were taken in the performance of the work and in the use of the electric welding machine referred to in the evidence, and if you further find that such conduct was not negligent, then your verdict must be for the defendants and against the plaintiffs."
Compare footnote 6.

6. In light of his closing argument, we think the defense counsel can hardly argue on appeal that the fact of reinsurance would go only to the issue of damages. He stated in his closing argument: "It's an ambitious undertaking to try to recover something to which they are not entitled, and if they are ambitious in that respect, I think you have a right to conclude they will be in other respects."

and that the company with whom it contracted sublet to a second contractor, who in turn sublet to Bittner Boiler and Engineering Company, which performed the work.[7] Bittner used electric arc welding equipment operating at 9000° in performing the work. The heat from this equipment ignited a fire in the building and extensive damage occurred.

The defendant denies that it elected to repair the windstorm damages. It further contends that even if it did so, the lessee had no right of recovery against it, and that Transit cannot recover as its rights are as a subrogee of the lessee.

Transit contends it can recover on either of two theories: The first of these was set out in Count I: that by electing to repair, the defendant assumed the obligations of a building contractor; that the repairs present an inherently dangerous risk in the absence of safety precautions;[8] that the defendant is liable in tort for failing to see that Bittner took adequate safety precautions in performing the work. The second theory was set out in Count II: that the lessor was required to maintain the premises in a tenable condition; that by electing to repair, the defendant was satisfying the lessor's obligation; that the lessee was a third party beneficiary of the defendant's obligations resulting from the election to repair; that a part of the obligation to repair was a non-dischargeable duty to perform the work with due care; that the performance of the work in a negligent manner resulted in damage.

Under Count I, the defendant's liability, if any, for the acts of the independent contractor arose from its duty to see that adequate safety precautions were taken in the light of a peculiar

danger inherent in the nature of the work; whereas under Count II, the defendant's liability, if any, for the act of the independent contractor stemmed from a non-dischargeable duty by reason of a contract which required that the work be done with due care.

Under Count I, Transit was required to establish that the repair presented an inherently dangerous risk in the absence of safety precautions. While under Count II, Transit need only prove simple negligence on the part of the independent contractor; it required Transit to establish that the lessee was a third party-creditor beneficiary of the defendant's obligation to repair.

 The court refused to submit Count II to the jury. While the record does not indicate the court's reasons, the defendant argues that the refusal was proper because: (1) Count II failed to state a good cause of action; and (2) the doctrine of election of remedies precluded submission of both counts.

We do not agree with either contention.

 (1) In determining whether Count II stated a good cause of action, the *Erie* doctrine requires that we look to state law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See also, Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The *Klaxon* doctrine requires that we look to the law of the state in which the District Court, including their conflict of laws rules.[9] E. g., Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

7. Whether the defendant elected to repair was a jury question and was properly submitted by the court.

8. This question was also one for the jury and was properly submitted by the court.

9. Indeed, there is an authority holding that where the forum state would apply foreign law, the federal court is not to look directly to that foreign law but rather is to determine how the forum state would interpret the foreign law. Nolan v. Transocean Air Lines, 276 F.2d 280, 281 (2d Cir. 1960), rev'd on other grounds, 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961).

Under Missouri rules of conflict of laws, Michigan law would control the question of whether a good cause of action was stated. See, Illinois Fuel Co. v. Mobile & O. R. Co., 319 Mo. 899, 8 S.W.2d 834 (1928). Liebing v. Mutual Life Ins. Co. of New York, 276 Mo. 118, 207 S.W. 230 (1918).

■■ The defendant does not question that under Michigan law, a builder has a non-dischargeable duty to use due care in the performance of a contract and is liable for the negligence of an independent contractor who performs the work. Wight v. H. G. Christman Co., 244 Mich. 208, 221 N.W. 314, 317 (1928); Lauer v. Palms, 129 Mich. 671, 89 N.W. 694, 58 L.R.A. 67 (1902). Nor does it question that when an insurer elects to repair a damaged building, the insurance contract is converted into a building contract. Michigan Fire Repair Con. Ass'n v. Pacific Nat. F. Ins. Co., 362 Mich. 552, 107 N.W.2d 811 (1961).

It does argue, however, that an exception to the non-dischargeable duty rule applies when the lessor has knowledge of, acquiesces in, or consents to the delegation (a fact conceded by Transit) of actual performance to an independent contractor. It cites Continental Ins. Co. v. I. Bahcall, Inc., 39 F.Supp. 315 (E.D.Wis. 1941) (Held: Promissor liable for independent contractor's destruction of leased property.), to support this proposition. We do not agree that *Bahcall* even by implication supports Transamerica's contention. It dealt primarily with the question of the circumstances under which a promissor is permitted to delegate its performance rather than that of the promissor's liability if performance is delegated.[10]

Here, there is no question of the defendant's right to delegate its duty to repair to an independent contractor, but rather a question of whether it could, by doing so, relieve itself of its obligation to have the work performed in a non-negligent manner. Restatement, Contracts, § 160 (1932); Simpson, Contracts, 353 (1954).

Even if it be conceded that *Bahcall* provides an exception to the general rule, there is no indication that Michigan would apply this Wisconsin rule. Wight v. H. G. Christman Co., supra; Lauer v. Palms, supra. The exception is neither recognized by authorities. Corbin, Contracts, § 868 (1951); Restatement, Contracts, § 160 (comment on Subsection [4]) (1932); Simpson, Contracts, 353 (1954), nor supported by logic. Thus we decline to engraft it on Michigan law.

The defendant further argues that the lessee was an incidental, rather than a third party-creditor beneficiary. Thus, neither it nor Transit, as its subrogor, had a right to maintain an action against Transamerica.

Transit argues that the lessee had that status, and cites Greenlees v. Owen Ames Kimball Company, 340 Mich. 670, 66 N.W. 2d 227, 46 A.L.R.2d 1205 (1954), to support its position. There the lessee, a furrier, leased a basement shop area in a bank. A back room, which could only be gotten at through the lessee's shop, contained a safe connected by a chute to a night depository in the lobby. The lessor let a contract to a builder to remodel the lobby. In the course of remodeling, the builder went through the lessee's premises to get to the back room on at least two occasions. In removing the safe and in installing new equipment, the merchandise of the lessee was damaged. The lessee sued the builder on the theory that it was a third party beneficiary of the building contract. The Michigan Supreme Court, in reversing the lower court, held that the lessee was a third party-creditor beneficiary, rather than an incidental beneficiary.

The defendant argues that *Greenlees* is distinguishable from this case because

---

10. As a case cited in *Bahcall* indicates, where it is the intention of the parties that the promissor act only as the hiring agent in the employment of the independent contractor, the promissor would then not be liable for any breach by the independent contractor. John J. Radel Co. v. Borches, 147 Ky. 506, 145 S.W. 155, 39 L.R.A.,N.S., 227 (1912).

there the building contract specifically stated that the work was to be done with a minimum of disturbance to tenant's daytime activities in the building, and that here the building contract contained no such clause. This position is without merit. In *Greenlees*, the object of the building contract was to remodel a lobby which was not a part of the tenant's leasehold. Here, the whole object of the building contract was to repair the property occupied by the lessee. When the insurer exercised his option to repair, it was evident that the lessee was the party to benefit immediately.

Furthermore, it should be noted that even though the insurance policy was in the name of the lessor, the lessee paid the premiums, and the defendant, the insurer, waived its subrogation rights against the lessee. Thus, even if the lessee negligently destroyed the premises, the lessor had to rebuild them under the terms of the lease, and Transamerica had no subrogation rights against the tenant. In such circumstances, the lessee is clearly more than an incidental beneficiary. See Keeton, Basic Insurance Law, 191 n. 1 (1960).[11]

■ (2) The defendant argues that the trial court properly refused to submit Count II to the jury. It contends that an election between it and Count I was required, citing a Michigan case, Krause v. Hartford Accident & Indemnity Co., 331 Mich. 19, 49 N.W.2d 41 (1951), to support this view. The reliance is misplaced.[12] Michigan law is not determinative of the issue.

This Court, in Breeding v. Massey, 378 F.2d 171 (8th Cir. 1967), looked to the Federal Rules of Civil Procedure to resolve the question. We did not discuss in *Breeding* whether *Erie* requires state election of remedy rules to be applied, but simply stated:

" * * * Rule 8(e), Fed.R.Civ.P., expressly provides:

'A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. * * * A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal, equitable, or maritime grounds.' Rule 8 (a) provides, 'Relief in the alternative or of several different types may be demanded.' See also, Rule 18(a).

"The right of a plaintiff to try his case on alternate theories has uniformly

11. Prior to our decision in General Mills v. Goldman, 184 F.2d 359 (8th Cir. 1950), cert. denied, 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683 (1951), insurers rarely made claims against tenants on the basis of subrogation to the lessor's rights. Friedman, Landlords, Tenants and Fires—Insurer's Right of Subrogation, 43 Corn.L.Q. 225 (1957); Brewer, An Inductive Approach to the Liability of the Tenant for Negligence, 31 B.U.L.Rev. 47, 50 (1951). Since our decision, it has become possible to obtain an indorsement whereby the insurer waives his subrogation rights. Keeton, supra.

12. First, the *Krause* case indicates that the same test of inconsistency applies. This is the settled law of Michigan; thus, in Willard v. Shekell, 236 Mich. 197, 210 N.W. 260 (1926), the Court stated: "[T]he remedies must be inconsistent; as sometimes said, the asserting of one claim negatives the assertion of the other." Id. at 262.

Furthermore, in *Krause*, the first theory had been advanced in a prior indemnity action and in a prior equity suit for an injunction. Both of the prior suits had been dismissed. The Michigan court was concerned with the aspects of the case related to splitting causes of action and *res judicata*. The citation in Krause to Hassberger v. General Builders' Supply Co., 213 Mich. 489, 182 N.W. 27 (1921), further indicates that the Michigan court was concerned with the problem of a party suing first on one theory and then commencing a second suit of a different theory but based on the same facts. An additional factor in the *Krause* case was that attendant to the dismissal of the interpleader action, the plaintiff received $1,530 in settlement. It is common for the election of remedies' doctrine to be used as a substitute or variant of *res judicata*. Knowles v. Dark & Boswell, 211 Ala. 59, 99 So. 312 (1924). See Generally, Note, Election of Remedies: A Delusion?, 38 Colum.L.Rev. 292, 294, 318–19 (1938).

been unheld in the federal courts and plaintiff cannot be required to elect upon which theory to proceed. Campbell v. Barnett, 10 Cir., 351 F.2d 342, 344; Pulliam v. Gulf Lumber Co., 5 Cir., 312 F.2d 505, 507; Herlihy Mid-Continent Co. v. Bay City, 6 Cir., 293 F.2d 383, 385; see 2A Moore's Federal Practice ¶8.31[2]."

Id., at 177–178.

At least one Circuit has held that we must look to the law of the state in which the trial is conducted to determine the law to be applied. Berger v. State Farm Mutual Automobile Insurance Co., 291 F.2d 666 (10th Cir. 1961). The *Berger* case has been criticized by commentators. Wright, Federal Courts, p. 250 n. 20 (1963); 15 Okla.L.Rev. 186 (1962). However, were we to follow *Berger* and thus apply Missouri law, it is clear that the Missouri court would apply its own election of remedies doctrine [13] which holds that an election is necessary only when the remedies are based on inconsistent fact situations. E. g., Davis v. Hauschild, 243 S.W.2d 956 (Mo.Sup.1951) (See cases cited therein).

The Missouri test of whether such inconsistency exists was detailed in *Davis*, supra:

"For such inconsistency to exist in fact the one must allege what the other denies, or the theory of the one must necessarily repudiate or be repugnant to the other. Are the facts here necessary to support one, consistent with the facts here necessary to support the other? Under any of the tests laid down by the adjudicated cases, or by the text-writers we do not find inconsistency between the two. Each is in affirmation of the validity of the note and deed of trust. Each in all respects affirms the validity and binding effect of the contract of trade of the properties made by the parties. Each asserts that defendant breached a phase of that contract. * * *"

Id at 960.

Here, the remedies are not based on inconsistent facts. Both theories require: (1) that Transit paid the lessee for its fire loss; (2) that Transamerica elected to repair the windstorm damage; (3) that Bittner was negligent. Count I required the additional finding that the work was inherently dangerous in the absence of safety precautions while Count II required the additional finding that the lessee was a third party-creditor beneficiary of a building contract that arose when Transamerica elected to repair. There is nothing factually inconsistent with these last two findings.[14]

---

13. We have been unable to find a case in any jurisdiction discussing whether or not the forum jurisdiction would apply its own election of remedies rules in a transitory action arising in a sister state. However, based on the rationale for the election of remedies rule, we conclude that Missouri would apply its own, if any.

In this case, we are concerned with whether an election is required before the case is submitted to the jury. Those courts requiring an election at that time appear to do so based on the view that jury confusion will result by submitting inconsistent theories. Note, Election of Remedies: A Delusion?, 38 Colum.L.Rev. 292, 315–16 (1938) (See cases cited therein.). Regardless of which position a court takes on the issue of whether the jury is likely to be confused, their reasons would appear to be the same regardless of whether the substantive rights are based on local or foreign law. Thus, we conclude that Missouri would look to its own law to determine whether the plaintiff must elect his remedies before going to the jury.

14. Transamerica has cited cases holding that a party may not sue in tort (ex delicto) and contract (ex contractu). Those cases do not support an election of remedies doctrine in this case. Here, both theories sound in tort. The requirement that under Count II Transit must show the lessee was a third party-creditor beneficiary only goes to establishing "duty:"

"An actionable tort may arise from breach of duty imposed by contract. In such case, the liability arises out of a breach of duty incident to and created by the contract, but is only dependent upon the contract to the extent necessary to raise the duty."

Swann v. Wright, 180 Ga. 323, 179 S.E. 86, 88 (1935).

It is thus clear that whether we apply the Federal Rules of Civil Procedure or Missouri law, it was an error to refuse to submit both counts to the jury.

Serious questions have also been raised as to: whether it was error to permit the defendant to argue that Transit ought to be denied relief in this action as it had the right to sue Bittner, and whether it was error to require that the entire direct examination of a deposed witness be read to the jury. Since it is unlikely that these issues will be raised on a retrial, and since our holdings on Points I and II are dispositive of this appeal, we do not feel compelled to reach the two remaining instances of alleged error.

Reversed and remanded to the District Court for action consistent with this opinion.[15]

15. Transit also contended that defendant's Exhibit A and certain deposition testimony of the adjuster were immaterial and otherwise inadmissible. The defendant contended that both were material to the issue of proving knowledge and acquiescence in the delegation of the repair work to independent contractors. To the extent that this evidence goes to knowledge and acquiescence, and to the extent we hold that knowledge and acquiescence even if established is not a good defense (see Part II of our opinion), it was error to admit the evidence.

The argument that defendant's Exhibit A was with proper foundation is not well taken. Nor was the deposition evidence hearsay, because it was not "testimony in court or written evidence, of a *statement* made out of court, *such statement being offered as an assertion to show the truth of matters asserted therein*, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence, 460 (1954).